RATLIFF v GENERAL MOTORS CORPORATION

Docket No. 63828. Submitted March 3, 1983, at Detroit.—Decided July 19, 1983. Leave to appeal applied for.

Lubertha Ratliff sought workers' compensation benefits, alleging that she suffered from disabling mental disorders caused by harassment from her supervisor during the course of her employment with General Motors Corporation. The hearing referee determined that Ratliff failed to prove that she had received a personal injury arising out of and in the course of her employment. The Workers' Compensation Appeal Board, by a 2 to 1 vote, reversed the referee's decision, finding that Ratliff had given proper notice of injury and that she had sustained a personal injury that arose out of and in the course of her employment. General Motors sought leave to appeal in the Court of Appeals, which denied the application for leave to appeal. General Motors filed an application for leave to appeal in the Supreme Court. The Supreme Court, in lieu of granting leave to appeal, remanded the cause to the Court of Appeals for consideration "as on leave granted". 413 Mich 860 (1982). General Motors filed an appeal. Ratliff filed a cross-appeal. *Held:*

1. The finding of the appeal board of a personal injury arising out of and in the course of employment was supported by competent evidence. The appeal board applied the correct legal standard in its determination that the mental disorder was associated with a work-related event.

2. The Court of Appeals is powerless to overturn a decision of the Michigan Supreme Court. ·

3. The appeal board erred in holding that the running of the

REFERENCES FOR POINTS IN HEADNOTES

[1] 82 Am Jur 2d, Workmen's Compensation §§ 547, 635.

[2] 82 Am Jur 2d, Workmen's Compensation § 301.
  Mental disorders as compensable under workmen's compensation acts. 97 ALR3d 161.

[3] 20 Am Jur 2d, Courts §§ 186, 201.

[4] 82 Am Jur 2d, Workmen's Compensation § 446.

[5] 82 Am Jur 2d, Workmen's Compensation § 444.

[6] 82 Am Jur 2d, Workmen's Compensation § 453.

[7] 81 Am Jur 2d, Workmen's Compensation § 26.

[8] 82 Am Jur 2d, Workmen's Compensation § 579.

notice of injury limitation period was tolled during the period in which the accident and health insurer was considering the application for extended medical benefits; however, the board also erred in holding that there had been no adequate notice of injury within the limitation period. Timely notice of injury was given.

4. The employer was not denied the due process right of a fair and impartial tribunal by reason of the fact that two members of the three-member appeal board panel which heard this case were designated as representatives of employee interests.

5. The interest on the award shall be at 12% per annum in accordance with the January 1, 1982, amendment of the controlling statute.

Affirmed.

1. WORKERS' COMPENSATION — APPEAL BOARD — FINDINGS OF FACT — QUESTION OF LAW.

Findings of fact by the Workers' Compensation Appeal Board, if there is any evidence to support them, will not be disturbed on appeal in the absence of fraud; however, a decision based on an erroneous application of legal standards by the appeal board is subject to being overturned by an appellate court (MCL 418.861; MSA 17.237[861]).

2. WORKERS' COMPENSATION — MENTAL DISORDER — WORK-RELATED INJURY.

A worker is entitled to workers' compensation benefits for a mental disorder upon a showing that the worker is disabled, that a precipitating work-related event occurred and that the claimant's employment combined with some internal weakness or disease to produce the disability.

3. COURTS — COURT OF APPEALS — SUPREME COURT HOLDING.

The Court of Appeals is bound by stare decisis and is powerless to overturn a decision of the Supreme Court.

4. WORKERS' COMPENSATION — NOTICE OF INJURY — WAIVER — ALTERNATIVE BENEFITS.

Furnishing of alternative medical insurance benefits by an employer to an employee who has suffered a compensable injury suspends the running of the period of notice for a workers' compensation claim from the date alternative benefits begin until the payments end or notice is given that payment of the

alternative medical benefits has been terminated, whichever occurs later (MCL 418.381; MSA 17.237[381]).

5. WORKERS' COMPENSATION — NOTICE OF INJURY.

The statutory notice of injury requirement in the Worker's Disability Compensation Act may be satisfied by a worker's giving of notice of the injury to his or her foreman either before or after leaving his or her employment; the notice given to the employer need not indicate that there is a compensable injury, only that there has been a personal injury; there is no requirement that the notice to the employer indicate that the injury is work related (MCL 418.381; MSA 17.237[381]).

6. WORKERS' COMPENSATION — NOTICE OF INJURY.

Notice to an employer that an employee will not be able to work because he was sick, coupled with knowledge of the stress the work placed upon the employee and his reaction to that stress and the fact that the employer's insurance carrier had paid sickness and accident benefits and was processing a request for extended disability benefits, are sufficient to provide the statutory notice of injury required by the Worker's Disability Compensation Act (MCL 418.381; MSA 17.237[381]).

7. WORKERS' COMPENSATION — DUE PROCESS — IMPARTIAL TRIBUNALS.

An employer is not denied the due process right to a hearing before a fair and impartial administrative tribunal by reason of the fact that two of the three members of the Workers' Compensation Appeal Board hearing a case are designated as employee representatives.

8. WORKERS' COMPENSATION — INTEREST ON AWARD.

The provision of the January 1, 1982, amendment to the Worker's Disability Compensation Act providing that interest on compensation awards shall be paid at the rate of 12% per annum from the date each payment was due until paid is applicable to an award which is made by the appeal board prior to January 1, 1982, but which is not decided on appeal until after that date (MCL 418.801[5]; MSA 17.237[801][5]).

*Marston, Sachs, Nunn, Kates, Kadushin & O'Hare, P.C.* (by *Granner S. Ries),* for plaintiff.

*Plunkett, Cooney, Rutt, Watters, Stanczyk & Pedersen* (by *Jonathan T. Kopit),* for defendant.

Before: BEASLEY, P.J., and V. J. BRENNAN and WAHLS, JJ.

V. J. BRENNAN, P.J. The plaintiff, Lubertha Ratliff, filed a petition for a hearing before a workers' compensation referee on August 31, 1973. The petition was mailed to the defendant, General Motors Corporation, on September 7, 1973. The petition alleged that plaintiff suffered from disabling "psychosis, traumatic neurosis, nerves and related conditions" caused by the "constant and repeated harassment from [her] supervisor". After hearings conducted in June and September, 1976, the referee issued his decision on September 30, 1976, finding that plaintiff failed to prove that she had received a personal injury arising out of and in the course of her employment. Plaintiff appealed that decision to the Workers' Compensation Appeal Board (WCAB). During the pendency of the appeal, additional testimony was taken. On December 9, 1980, in a two-to-one split decision, the WCAB reversed the referee's decision, finding that plaintiff had properly notified the defendant of her injury and that she did sustain a personal injury that arose out of and in the course of her employment.

On January 8, 1981, defendant filed an application for leave to appeal to this Court. On May 5, 1981, this Court denied defendant's application for lack of merit in the grounds presented. Defendant's request for a rehearing was also denied.

On July 2, 1981, the defendant filed an application for leave to appeal to the Michigan Supreme Court. On April 2, 1982, the Supreme Court, in lieu of granting leave to appeal, remanded the cause to this Court for consideration "as on leave granted". *Ratliff v General Motors Corp*, 413 Mich 860 (1982). On April 12, 1982, defendant filed its

appeal and on April 20, 1982, plaintiff filed a claim of cross-appeal.

Defendant's first contention is that the plaintiff did not suffer a work-related personal injury as that term is defined in *Deziel v Difco Laboratories, Inc (After Remand)*, 403 Mich 1; 268 NW2d 1 (1978). Defendant argues that plaintiff failed to show the existence of a triggering or precipitating work event culminating in disability. See *Deziel v Difco Laboratories, Inc, supra,* pp 21, 25, 37. See MCL 418.301, 418.401; MSA 17.237(301), 17.237(401).

It is the function of the WCAB to act as the trier of fact, weighing the credibility of the evidence and drawing reasonable inferences from the facts established. Absent fraud, the WCAB's findings of fact may not be disturbed, if there is any evidence in the record to support them. Const 1963, art 6, § 28; MCL 418.861; MSA 17.237(861); *Derwinski v Eureka Tire Co,* 407 Mich 469, 481-482; 286 NW2d 672 (1979); *Kostamo v Marquette Iron Mining Co,* 405 Mich 105, 135-136; 274 NW2d 411 (1979). On the other hand, the WCAB's erroneous application of legal standards is properly reversible by an appellate court.

In *Deziel v Difco Laboratories, Inc, supra,* the Michigan Supreme Court established a three-part test for determining whether a mental disorder is compensable. That test is as follows:

"(1) whether the worker/claimant is disabled and (2) whether a personal injury (a precipitating, work-related event) occurred. This Court is only requiring that the subjective causal nexus standard be utilized in deciding (3) whether the claimant's employment combined with some internal weakness or disease to produce the disability." *Deziel v Difco Laboratories, Inc, supra,* p 37.

See *Deziel v Difco Laboratories, Inc, supra,* p 25, fn 11. It is the second prong of this test with which we are concerned. The *Deziel* Court did not elaborate on the proper interpretation of the second prong, because it was abundantly clear that plaintiffs therein were disabled on account of some work-related personal injury, *Deziel v Difco Laboratories, Inc, supra,* pp 25, 37, 41, 42-43, 46. However, the *Deziel* Court explained: "in most cases involving alleged mental injuries, the condition is usually latent to some degree and only becomes patent upon a 'triggering' or precipitating event, *i.e.,* a personal injury." *Deziel v Difco Laboratories, Inc, supra,* p 25, fn 11.

In *Lopucki v Ford Motor Co,* 109 Mich App 231, 239-240; 311 NW2d 338 (1981), this Court approvingly quoted *Gahagan v Henry Ford Hospital,* 1977 WCABO 1216, 1260 (No. 195):

"It is, of course, true that where we are confronted with pure hallucinatory experience unprovoked by any work-related stimuli or environmental occurrences then there can be no showing of causation or compensable disability or death. But this is not the case here or in other situations where there are demonstrable employment-related events, conditions, pressures or stresses which precipitate or trigger a psychotic or psychological state and ultimate suicide or which 'aggravated or accelerated or combined with some internal weakness to produce the injury'. *Deziel, supra.* This is a factual finding based upon evidentiary and established facts. Where hallucinatory, delusional or other abnormal psychological and emotional states are traceable psychologically to environmental and other work-related conditions, however innocuous or seemingly trivial from an objective point of view, the burden of proof has been satisfied."

Thus, it appears that in order to establish a personal injury, the plaintiff must show the existence of a triggering or precipitating work event.

In the instant case, the WCAB applied the correct legal standard. The board specifically recognized the applicability of the *Deziel* test and, after noting that precipitating events occurred, even though the plaintiff misperceived several precipitating events, concluded that plaintiff had satisfied the *Deziel* test in that "she is disabled on account of a personal injury caused her disability". Further, there is ample evidence to support the WCAB's conclusion that the plaintiff suffered a work-related personal injury. The jockeying of plaintiff's job assignments, her repeated confrontations with her supervisor, her apparent inability to handle the work load and several admonishments by her supervisors were all events that indisputably occurred. While from an objective point of view these events seemed rather innocuous, they were nonetheless "precipitating" or "triggering" events that created the feeling of insecurity and paranoia that led to plaintiff's condition, and absent which her condition may not have developed. In addition, these events were not part of the ordinary work day. Therefore, we affirm the WCAB's decision awarding benefits to plaintiff.

Defendant's next contention is that the *Deziel* definition of personal injury violates both the Worker's Disability Compensation Act and the Due Process Clause of the Fourteenth Amendment of the United States Constitution. Defendant did not raise this issue before the WCAB.

The issue raised by the defendant in essence asks this Court to address the constitutionality of the Supreme Court's decision in *Deziel.* This we decline to do. This Court is bound by the doctrine of stare decisis and is powerless to overturn a decision of the Supreme Court. *Schwartz v City of Flint (After Remand),* 120 Mich App 449, 462; 329

NW2d 26 (1982); *People v Recorder's Court Judge #2,* 73 Mich App 156, 162; 250 NW2d 812 (1977), *lv den* 400 Mich 825 (1977).

The next issue raised by the defendant is whether the plaintiff timely notified defendant of her injury.

At the time in question,[1] MCL 418.381; MSA 17.237(381) stated:

"(1) No proceedings for compensation for an injury under this act shall be maintained, unless a notice of the injury has been given to the employer within 3 months after the happening thereof and unless the claim for compensation with respect to the injury, which claim may be either oral or in writing, has been made within 6 months after the occurrence of the same; or in case of the death of the employee, within 12 months after death; or in the event of his physical or mental incapacity, within the first 6 months during which the injured employee is not physically or mentally incapacitated from making a claim. In a case in which the employer has been given notice of the injury, or has notice or knowledge of the same within 3 months after the happening thereof, but the actual injury, disability or incapacity does not develop or make itself apparent within 6 months after the happening of the injury, but does develop and make itself apparent at some date subsequent to 6 months after the happening of the same, claim for compensation may be made within 3 months after the actual injury, disability or incapacity develops or makes itself apparent to the injured employee, but no such claim shall be valid or effectual for any purpose unless made within 3 years from the date the personal injury was sustained. Any time during which an injured employee shall be prevented by reason of his physical or mental incapacity from making a claim shall not be construed to be any

---

[1] It should be noted that while the Michigan Worker's Disability Compensation Act has since been amended, the analysis that follows will be premised upon the statutory language as it existed at the time of the alleged injury. See *Miklik v Michigan Special Machine Co,* 415 Mich 364; 329 NW2d 713 (1982).

part of the 6 months' limitation mentioned in this section. In a case in which the employer has been given notice of the happening of the injury or has notice or knowledge of the happening of the accident within 3 months after the happening of the same, and fails, neglects or refuses to report the injury to the bureau as required by the provisions of this act, the statute of limitations shall not run against the claim of the injured employee or his dependents, or in favor of the employer or his insurer, until a report of the injury has been filed with the bureau."

Plaintiff's last day of work was March 17, 1972. The next day plaintiff called the defendant's office, spoke to an unidentified male, and told him she was not coming in to work that day because "something terrible was wrong and I had to go to the doctor". On June 17, 1972, plaintiff sought medical attention. After giving her personal history to an intake worker on June 17, plaintiff began treatment with Dr. Edward A. Nol on July 7, 1972. Between July 7, 1972, and March 17, 1976, plaintiff visited Dr. Nol a total of 54 times. At the time of trial, plaintiff was still receiving treatment from Dr. Nol. When plaintiff began receiving sickness and accident benefits is not clear. There is some evidence, however, indicating that she began receiving such benefits immediately following her last day of work. Nonetheless, it is clear that she received these benefits until March 17, 1973. Sometime before or soon after this date, plaintiff applied for extended disability benefits. On May 9, 1973, defendant's insurance carrier notified plaintiff that a statement from her physician was needed before a determination on her claim for extended disability benefits could be made. On August 28, 1973, plaintiff mailed this statement to the insurer. Presumably, it was received a few days later. On August 31, 1973, plaintiff filed her

petition for a hearing before a workers' compensation referee. This petition was mailed to the defendant on September 7, 1973. Presumably, defendant received it a few days later.

The majority of the WCAB found that the running of the period of limitation was tolled from the time plaintiff began receiving sickness and accident benefits until defendant's insurance carrier notified plaintiff that her application for extended disability benefits was denied. The majority relied upon *Girlish v Acme Precision Products, Inc,* 404 Mich 371; 273 NW2d 62 (1978), *reh den* 406 Mich 1103 (1979). Thus, the WCAB found that plaintiff had timely notified the defendant.

In *Girlish, supra,* p 375, the Supreme Court stated:

"We hold that an employer impliedly waives his right to notice when his group health and accident insurance carrier furnishes alternative medical benefits to an employee who has suffered an otherwise compensable injury. This implied waiver only suspends the running of the statute of limitations for filing the compensation claim from the date alternative benefits are commenced until the payments are terminated or notice is given that payment of the medical benefits has been terminated (whichever occurs later)."

In the instant case, the WCAB found that the tolling of the limitation period was extended beyond the time plaintiff's benefits were terminated to include the time plaintiff's application for extended disability benefits was pending. We find that the WCAB erred. The Supreme Court's holding in *Girlish* clearly indicates that the tolling of the limitation period occurs only during the time the benefits are actually being paid. The limitation period is not tolled during the time that the claim-

ant has applied for the benefits. While extended disability benefits are unquestionably "alternative benefits", the plaintiff herein never received such benefits, she only applied for them. This application period cannot be tacked on to the tolling period. Thus, under *Girlish,* plaintiff's notice was not timely.

However, we further hold that the WCAB erred in finding that there was no record evidence that defendant was sufficiently notified of plaintiff's injury. Plaintiff asserts that defendant's foreman and other employees were aware of her personal injury long before defendant was served with plaintiff's petition for a hearing before a workers' compensation referee.

It is clear that notice to a foreman is notice to the employer. *Norris v Chrysler Corp,* 391 Mich 469; 216 NW2d 783 (1974); *McBeth v Chrysler Corp,* 48 Mich App 399, 404; 210 NW2d 384 (1973). In addition, there is no requirement that the employee provide notice at any specific time, such as at the time of disablement, at the time of leaving work or at some specific time after leaving work. Hence, the employee may provide notice before leaving the employment or before the date determined to be the date of disablement. *Coates v Continental Motors Corp,* 373 Mich 461, 464-465; 130 NW2d 34 (1964); *McBeth v Chrysler Corp, supra,* pp 408-409.

The Supreme Court in *Norris v Chrysler Corp, supra,* analyzed the notice requirement of the Worker's Disability Compensation Act and reached the following conclusion:

"The notice given must be sufficient to make the employer aware that an injury has been sustained. If, after inquiry, the employer does not believe the injury to be compensable, it need not report the accident.

However, in not reporting the accident, the employer assumes the risk that the injury will be found to be compensable. If such a determination occurs, the employer's penalty is a suspension of statutory limitations." *Norris v Chrysler, supra,* p 477.

See *Coates v Continental Motors Corp, supra,* pp 467-468. The Court stressed that the employer need not receive notice of a compensable injury, but rather need only receive notice of personal injury. *Norris v Chrysler Corp, supra,* p 480. Thus, it is not required that the employer know the injury is work-related. See *Combs v Michigan Mobile Homes,* 406 Mich 507; 280 NW2d 451 (1979); *Meads v General Motors Corp,* 402 Mich 540; 266 NW2d 146 (1978); *Krol v Hamtramck,* 398 Mich 341; 248 NW2d 195 (1976); *Young v Kmart Corp,* 123 Mich App 789; 333 NW2d 359 (1983).

We find that the defendant did have notice of plaintiff's injury. Defendant's foreman, Paul Ammon, knew or was aware of the precipitating events that led to plaintiff's breakdown. He was the cause, at least in part, of the continuous transferring of plaintiff from job to job. He witnessed her hysteria on one occasion and was told by plaintiff that she was upset and could not take "it" anymore. Moreover, she called in sick to work on May 18, 1972, the date after her last day of work:

"*Q.* The day you stopped working, did you call in and talk to anybody?
"*A.* Yes. I called in the next day and I—
"*Q.* When you call in who do you talk to when you are calling in sick?
"*A.* Called in to Plant 8, front office. I don't know who I spoke to.
"*Q.* Was it a male or female?
"*A.* A male.

"*Q.* What did you tell that person?

"*A.* I told him this is Lubertha Ratliff, I'm calling in to say I wouldn't be in this afternoon to work because I was sick.

"*Q.* Did you indicate what was—

"*A.* They said what's wrong and I said I don't know what was wrong, but something terrible was wrong and I had to go to the doctor and when I find out what was wrong I would bring in a slip stating what was wrong, but something terrible is wrong and I couldn't work another day, another eight hours."

We find from the above facts, when viewed in conjunction with the fact that plaintiff applied for and received sickness and accident benefits for a full year and the fact that defendant's insurer was processing plaintiff's application for extended disability benefits, that there can be no doubt that defendant had notice of plaintiff's injury.

The final issue raised by defendant concerns the composition of the WCAB panel that issued the decision below. Before 1978, MCL 418.251; MSA 17.237(251) read:

"A workmen's compensation appeal board is created, herein referred to as the board. It shall consist of 11 members, a majority of whom shall be attorneys at law licensed to practice in the courts of this state. Each member of the board shall devote his entire time to and personally perform the duties of his office and shall not engage in other business or professional activity. The governor, with the advice and consent of the senate, shall appoint the members for terms of 4 years, and until their successors are appointed and qualified. A vacancy shall be filled for an unexpired term in the same manner as the original appointment. The governor shall designate the chairman of the board."

In 1978, the provision was amended to read as follows:

"(1) A worker's compensation appeal board is created, referred to in this act as the board. The board shall consist of 15 members, a majority of whom shall be attorneys at law licensed to practice in the courts of this state. *Of the board members, 6 shall be representative of employee interests in the state, 6 members shall be representative of employer interests in the state, and 3 members shall be representative of the general public.* A member of the board shall devote his or her entire time to and personally perform the duties of the office and shall not engage in other business or professional activity. The governor, with the advice and consent of the senate, shall appoint the members for a term of 4 years, and until their successors are appointed and qualified. A vacancy shall be filled for an unexpired term in the same manner as the original appointment. The governor shall designate the chairperson of the board from the general public members.

"(2) *An appointment made to the board after the effective date of this subsection shall reflect the membership required by subsection (1)."* (Emphasis added.)

Apparently, William C. Marshall, Jr., was a member of the WCAB before 1978. At the time he authored and rendered the decision in this case, December 9, 1980, he still had not been designated. According to the defendant, one month later, in January, 1981, member Marshall was designated in accordance with the above statute as an employee representative. With respect to the other two members of the board at the time of the rendering of the decision below, member Janet Huntley Phelps was an employee representative, and member Stephen C. Oldstron was an employer representative. In light of these facts, defendant contends that the composition of the panel constituted a denial of its due process right to a hearing before a fair and impartial administrative tribunal. US Const, Am XIV; Const 1963, art 1, § 17.

At the relevant time in question, MCL 418.261(2); MSA 17.237(261)(2) stated:

"A matter pending on review shall be assigned to a panel of 3 members of the board for disposition. The composition of panels shall be alternated so that each member of the board serves on panels with other members of the board with a frequency which is as substantially equal as possible. The decision reached by a majority of the assigned 3 members shall be the final decision of the board. If a majority of the assigned 3 members are unable to agree, the matter shall be reviewed by the entire worker's compensation appeal board."

Until very recently, see MCL 418.261(2); MSA 17.237(261)(2), as amended by 1980 PA 357, this rotation was conducted in a completely random fashion. Thus, under this system the composition of the panel varied, with some panels containing two or more representatives of employee interests, and others containing two or more representatives of employer interests. In *Pitoniak v Borman's, Inc,* 104 Mich App 718; 305 NW2d 305 (1981), 411 Mich 1049 (1981), *cert den* 455 US 901; 102 S Ct 1242; 71 L Ed 2d 440 (1982), a panel of this Court rejected the same argument defendant has raised herein. Further, in *Warren v Motor Wheel Corp,* 110 Mich App 731; 313 NW2d 286 (1981), *lv den* 411 Mich 1049 (1981), this Court again rejected the same argument defendant raises. However, in *Vayiar v Vic Tanny International,* 114 Mich App 388, 391; 319 NW2d 338 (1982), the Court held that the defendants in that case were denied their due process rights to an impartial decision-maker. We have reviewed the above decisions and find that we are in agreement with the *Pitoniak* and *Warren* decisions. After applying those decisions to the facts of this case, we find no reversible error.

Plaintiff raises an additional issue herein. She argues that she is entitled to the payment of

interest on her compensation award at the rate of 12% per annum.

MCL 418.801(5); MSA 17.237(801)(5), which became effective January 1, 1982, reads:

> "When weekly compensation is paid pursuant to an award of a hearing referee, the board, or a court, interest on the compensation shall be paid at the rate of 12% per annum from the date each payment was due, until paid."

In *Selk v Detroit Plastic Products,* 120 Mich App 135, 143; 328 NW2d 15 (1982), *lv gtd* 417 Mich 934 (1983), this Court held that although the effective date of the above statute was January 1, 1982, "The amendment clearly and unambiguously requires that for all awards made after January 1, 1982, the 12% interest rate be computed by referring to the date payment became due without regard to the fact that payment may have become due prior to January 1, 1982". See *Selk v Detroit Plastic Products, supra,* pp 142-149. Defendant concedes the applicability of *Selk.* Thus, we find that plaintiff is entitled to interest accordingly.

Although the WCAB decision was entered on December 9, 1980, 12% interest is nonetheless awarded. Although all of the WCAB decisions in *Selk,* which involved three cases, were entered after January 1, 1982, two of these decisions affirmed awards entered prior to January 1, 1982, by the referee. Since the decision herein will be entered after January 1, 1982, a logical extension of *Selk* and MCL 418.801(5); MSA 17.237(801)(5), which applies to awards of "a hearing referee, the board, or a *court",* requires that 12% interest be paid. (Emphasis added.)

Affirmed.