JONES v TRW, INC

Docket Nos. 66885, 66903. Submitted April 4, 1984, at Detroit.—
Decided November 21, 1984. Leave to appeal applied for.

Plaintiff, Timothy Jones, was injured in an automobile accident.
On the evening of the accident he had attended a banquet
sponsored by his employer, TRW, Inc., at which he had two
drinks and dinner. The formal proceedings lasted until about
10 p.m., at which time a cash bar was offered. Plaintiff stayed
until 12:45 a.m. and had seven more drinks. On his way home
plaintiff fell asleep and hit a tree. Plaintiff applied for workers'
compensation benefits. The Workers' Compensation Appeal
Board found that plaintiff suffered a compensable injury, since
plaintiff was on a special mission for his employer and there
was no deviation from that mission. TRW, Inc., and Travelers
Insurance Company, TRW's workers' compensation carrier,
appealed by leave granted. The Second Injury Fund also ap-
pealed by leave granted and the appeals were consolidated by
the Court of Appeals. *Held:*

1. Findings of fact by the Workers' Compensation Appeal
Board, if there is any evidence to support them, will not be
disturbed on appeal in the absence of fraud. However, a deci-
sion based on an erroneous application of legal standards by
the appeal board is subject to being overturned by an appellate
court.

2. Travel by an employee engaged in a special mission in the
interest of and at the direction of his employer is in the course
of his employment, and injuries sustained in that travel are
compensable under the workers' compensation act. It is possible
for the employment nexus to be broken and the special mission
ended prior to completion of a round trip, thus rendering the
subsequent injury uncompensable. A deviation from a special
mission will break the employment nexus if the deviation is so
great that it dwarfs the business purpose of the mission.
Factors to be considered in determining whether a deviation
has broken the employment nexus include the amount of time

REFERENCES FOR POINTS IN HEADNOTES
[1] 82 Am Jur 2d, Workmen's Compensation §§ 549 *et seq.,* 635.
[2] 82 Am Jur 2d, Workmen's Compensation §§ 250, 275 *et seq.*

elapsed, the amount of risk added by personal activities such as drinking, the nature of the job, and the extent to which there may be found an identifiable moment in time at which work duties ended and the deviation began.

3. The board's findings show an identifiable moment in time at which any work duties ended and the deviation began: the end of the formal banquet at 10 p.m. The arguably work-related aspects of the proceedings were finished by that time. Subsequent proceedings were purely social. The board erred as a matter of law in holding that plaintiff was entitled to benefits.

Reversed.

1. WORKERS' COMPENSATION — APPEAL — FINDINGS OF FACT — QUESTION OF LAW.

Findings of fact by the Workers' Compensation Appeal Board, if there is any evidence to support them, will not be disturbed on appeal in the absence of fraud; however, a decision based on an erroneous application of legal standards by the appeal board is subject to being overturned by an appellate court.

2. WORKERS' COMPENSATION — BUSINESS TRAVEL — EMPLOYMENT NEXUS.

Travel by an employee engaged in a special mission in the interest of and at the direction of his employer is in the course of his employment, and injuries sustained in that travel are compensable under the workers' compensation act; it is possible for the employment nexus to be broken and the special mission ended prior to completion of a round trip, thus rendering the subsequent injury uncompensable; a deviation from a special mission will break the employment nexus if the deviation is so great that it dwarfs the business purpose of the mission; factors to be considered in determining whether a deviation has broken the employment nexus include the amount of time elapsed, the amount of risk added by personal activities such as drinking, the nature of the job, and the extent to which there may be found an identifiable moment in time at which work duties ended and the deviation began.

*Dietrich & Cassavaugh, P.C.* (by *Edgar J. Dietrich),* for plaintiff.

*Lacey & Jones* (by *Stephen J. Schwartz),* for defendants TRW, Inc., and Travelers Insurance Company.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, and *Caleb B. Martin, Jr.,* Assistant Attorney General, for defendant Second Injury Fund.

Before: ALLEN, P.J., and V. J. BRENNAN and R. M. DANIELS,* JJ.

PER CURIAM. Defendants appeal by leave granted from an order of the Workers' Compensation Appeal Board holding that plaintiff had suffered a compensable injury arising out of and in the course of his employment. Findings of fact by the board are conclusive absent fraud if there is any evidence in the record to support them; however, this Court may review the board's resolution of questions of law. See, for example, *Ratliff v General Motors Corp,* 127 Mich App 410; 339 NW2d 196 (1983).

Here, the board made the following pertinent findings:

"[P]laintiff became a member of defendant's Old Guard, an association of employees with at least five years of seniority; he had heard of it the day he hired in. Thus, although it is obviously a company-sponsored organization aimed primarily at promoting friendship and loyalty to defendant and cowokers, it is run by officers elected from the membership and supported in part by activities like bingo and bake sales. No dues are exacted.

"When plaintiff had accumulated his five years, he was invited to his first Old Guard banquet, sponsored by defendant. A list of eligible employees was posted in the plant where a clip was circulated upon which one indicated one's intentions about going. Plaintiff went and picked up a pin, commemorating his five years of service with the company, at the door when he was given his name tag.

---

* Circuit judge, sitting on the Court of Appeals by assignment.

"Plaintiff had no further contact with the Old Guard until he had accumulated 10 years of seniority—only officers attended meetings; plaintiff had no idea what business was conducted. The banquet was, apparently, the association's big event although attendance was not required to receive a pin or bonus.

"Marlene Visconti, secretary to defendant's director of personnel, testified that, among her other duties, were those pertaining to the Old Guard, further evidence of defendant's close connection with the association. She testified that banquet invitations—766 in 1976 —were passed out by supervisors to eligible employees. That only 433 accepted and only 328 attended is some indication that the event was not viewed enthusiastically. Indeed, in 1977, 744 invitations were issued, 446 employees accepted, 343 attended, and, in 1978, 1,080 invitations were issued, 493 accepted, 380 attended. It further appears that, among those attending, were retirees to whom invitations were sent in addition to those issued employees.

"Plaintiff, however, felt some obligation to attend the banquet at which he was to receive his pin for 10 years of service. Because of his knee, he participated in no company-sponsored athletic activities and viewed the banquet as his way of showing loyalty to defendant.

"Moreover, plaintiff felt a certain amount of pressure from defendant to go. He testified that he 'was reminded several times from the officers and some of the old guard people about going to the banquet'.

*        *        *

"Plaintiff worked Friday, March 26, 1976, and left his house in Utica 'in the Ryan and Auburn area' on Saturday, March 27, at about 6:30 p.m. Although the plant was at Fourteen Mile and Van Dyke in Warren, the banquet was being held at the Troy Hilton, Fifteen Mile and Stephenson Highway; wives were not invited.

"Plaintiff claimed his pin and name tag among the many others at a table when he entered the banquet hall. He had about two drinks—Scotch and soda—at the complimentary cocktail hour and went in to dinner, a full meal which took 30 to 45 minutes to eat. Speeches following lasted about an hour. They were what plaintiff characterized 'outlook on employment'; a prognosis

of benefits and so forth was delivered by the vice-president of the company. Bonus checks and pins were handed out only to employees with at least 25 years. As was the banquet, these were underwritten by defendant.

"Such formal proceedings were completed by about 10 p.m., and adjourned to a cash bar. Socializing was thus encouraged, as was drinking. Plaintiff testified that he purchased drinks for tickets at from $1.25 to $1.50 each. The following:

" '*Q*. So, the staying after the dinner, the ceremony was all over, anybody that wanted to could stay around and drink at a reduced rate, is that correct?

" '*A*. I don't know about the reduced rate part of it.   .

" '*Q*. You know how much the drinks are in the bar at the Troy Hilton on a Saturday night?'

"Obviously much more than plaintiff paid.

"Plaintiff is not a drinker. His usual intake is never more than a couple beers a day. However, he collects swizzle sticks and, by 12:45 a.m., had nine of them. While plaintiff drank those seven drinks after dinner, he circulated and discussed work and sports with coworkers and foremen he had worked with over the years. The bar was still open when he felt he had had enough.

\* \* \*

"Plaintiff left the banquet hall, went to the restroom, and began his direct trip home; no deviation whatsoever is involved.

\* \* \*

"At Eighteen Mile and Ryan Road in Sterling Heights, after he had driven about five miles, plaintiff was in the accident out of which his claim arises. John Vincent Corbett, M.D., Board-certified orthopedic surgeon, was given a history of his having fallen asleep and driving into a tree; plaintiff has no recollection of the accident. He testified that, 'according to the official report, it was somewhere around one-o-eight in the morning.'

\* \* \*

"Attendance at the banquet was thus in the nature of

a special mission, * * * and was in the course of the employment. The injury arose out of it."

Resolution of the issues presented in this appeal requires us to apply the principles stated in *Bush v Parmenter, Forsythe, Rude & Dethmers,* 413 Mich 444; 320 NW2d 858 (1982). In that case, the Court explained that generally injuries sustained by employees going to and from work are not compensable, but that an exception to the general rule exists where the employee is on a special mission for the employer. 413 Mich 451-452. We will assume without deciding that the board correctly held that plaintiff was on a special mission for his employer when he attended the banquet. Nevertheless, a special mission does not necessarily require the employer to bear the risk for one complete round trip. 413 Mich 454.

An injury is not compensable unless there is a sufficient nexus between the employment and the injury. See *Nemeth v Michigan Building Components,* 390 Mich 734, 738; 213 NW2d 144 (1973). It is possible for the employment nexus to be broken and the special mission ended prior to completion of a round trip. *Bush, supra,* p 457. A deviation from a special mission will break the employment nexus if the deviation is so great that it dwarfs the business purpose of the mission. 413 Mich 455; *Thomas v Certified Refrigeration, Inc,* 392 Mich 623, 634-635; 221 NW2d 378 (1974). Factors to be considered in determining whether a deviation has broken the employment nexus include the amount of time elapsed, the amount of risk added by personal activities such as drinking, the nature of the job, and the extent to which there may be found an identifiable moment in time at which work duties ended and the deviation began. *Bush, supra,* p 457; 1 Larson, Workmen's Compensation Law, § 19.29, pp 4-310—4-320.

Whether particular facts show a deviation sufficient to break the employment nexus is a question of law which this Court may resolve without infringing upon the board's exclusive fact-finding jurisdiction. *Bush, supra,* p 460. In another case, a remand to the board for further findings of fact might be necessary in order for us to review the legal questions presented. See *Kostamo v Marquette Iron Mining Co,* 405 Mich 105, 136; 274 NW2d 441 (1979). Here, the board's findings indicate that it applied an incorrect legal standard. The board did not determine whether plaintiff's conduct had broken the employment nexus, but instead merely focused on the absence of a *geographic* deviation from the direct route to plaintiff's home. However, because the board's findings are sufficient to enable us to apply the correct legal standard, a remand for further findings is unnecessary.

The board's findings show an identifiable moment in time at which any work duties ended and the deviation began: the end of the formal banquet at 10:00 p.m. The arguably work-related aspects of the proceedings were finished by that time. Subsequent proceedings were purely social. While plaintiff felt obliged to attend the banquet, there was no evidence in the record suggesting any obligation to stay after the banquet. Plaintiff stayed after the banquet for a substantial period of time, 2-3/4 hours between 10:00 p.m. and 12:45 a.m. Most significantly, plaintiff's activities after the banquet substantially increased the risk of injury on the way home. Plaintiff was much more likely to be involved in an accident when driving home at 12:45 a.m. after nine drinks than if he had driven home at 10:00 p.m. after two.

Plaintiff's stay after the banquet presented a deviation from the special mission so great that it

dwarfed the business purpose of the mission and thus broke the nexus between plaintiff's employment and his subsequent injury. We therefore hold that, as a matter of law, plaintiff's injury was not compensable. In view of our resolution of this issue, we need not address the other issues presented.

Reversed.