## VAYIAR v VIC TANNY INTERNATIONAL

Docket No. 54621. Submitted December 10, 1981, at Detroit.—Decided March 18, 1982.

Mario Vayiar was employed as a butler for Roy Zurkowski, the owner of Vic Tanny International. After resigning from the position Vayiar filed a claim for disability benefits. An administrative law judge denied benefits on the ground that Vayiar had not sustained a work-related injury. The Workers' Compensation Appeal Board reversed and awarded benefits to Vayiar. The defendants, Vic Tanny International and Reliance Insurance Company, appeal by leave granted, alleging that they were denied due process because the appeal board panel was comprised of two representatives of employee interests and one representative of employer interests. *Held:*

A denial of due process results where a majority of a decision-making panel is strongly identified and aligned with one of the parties. The employee and employer representatives on the appeal board are by definition identified and aligned with the interests of the groups which they represent. Recent legislation recognizes this and provides that appeal board panels are to be comprised of one representative each of employer, employee and general public interests. In this case, the defendants made a sufficient showing that there was a substantial risk of bias to entitle them to a new hearing.

Reversed and remanded.

CYNAR, J., concurred, and would hold that a previous decision of the Court of Appeals, in which the arguments offered by the defendant herein were rejected, was incorrect.

1. WORKERS' COMPENSATION — APPEAL BOARD PANELS — ADMINISTRATIVE LAW.

A situation in which a majority of a decision-making administrative panel is strongly identified and aligned with one of the parties, but not with the other, amounts to a denial of due process; thus, an employer was denied due process in a hearing before a panel of the Workers' Compensation Appeal Board

REFERENCE FOR POINTS IN HEADNOTES
[1, 2] 81 Am Jur 2d, Workmen's Compensation § 26.

composed of two representatives of employee interests and one representative of employer interests.

2. WORKERS' COMPENSATION — APPEAL BOARD PANELS.

A panel of the Workers' Compensation Appeal Board is to be composed of three members, with one member each of the employee, employer, and general public representatives appointed to the board (MCL 418.261[2]; MSA 17.237[261][2]).

*Conklin, Benham, McLeod, Ducey & Ottaway, P.C.* (by *Martin L. Critchell),* for defendants.

Before: D. C. RILEY, P.J., and R. M. MAHER and CYNAR, JJ.

PER CURIAM. Defendants appeal by leave granted on February 13, 1981, the decision of the Workers' Compensation Appeal Board ordering defendants to pay workers' compensation benefits to plaintiff.

Plaintiff Mario Vayiar was employed as a butler for Roy Zurkowski, defendant Vic Tanny International's owner, for a number of years. Zurkowski's marriage in 1972 allegedly led to increased tension for plaintiff on the job,[1] allegedly culminating in a

---

[1] According to plaintiff, Mrs. Zurkowski was not a particularly pleasant person to work for. The following testimony from the administrative trial is illustrative:

"*Q.* Was your work limited to inside the house or would you have to work outside?

"*A.* Oh, outside, going shopping, going to the grocery store. If she don't like one thing, take them back, bring some little small thing. For example, you want one kind of soup. They call them College Inn broths to make the gravy. So I took in five grocery stores, back and forth in the snow and rain. Come back home and I can't find it and I bring one Campbell's Soup and she says 'I don't want that. Take it back.' Thirty-three cents to come back over there for me is pressure. It's tension to return something for thirty-one cents for soup in Bloomfield Hills.

\* \* \*

"*Q.* What was this pressure—

"*A.* Tension that make me feel bad—Mrs. Zurkowski, trying to satisfy her once in a while.

"*Q.* What was this pressure that Mrs. Zurkowski gave you night and day?

heart attack. After several weeks of hospitalization, plaintiff returned to work for several months before resigning in 1976, at the age of 62.

A short time after his resignation, plaintiff filed a claim for disability benefits. After a hearing, the administrative law judge denied benefits on the ground that plaintiff had not sustained a work-related personal injury. In a 2-1 decision, the Workers' Compensation Appeal Board reversed the decision of the administrative law judge, and awarded plaintiff benefits. Defendants appeal by leave of this Court.

The Workers' Compensation Appeal Board panel that awarded plaintiff benefits was composed of two representatives of employee interests and one representative of employer interests (the lone dissenter). Defendants contend that the composition of the appeal board constituted a denial of their due procees right to a hearing before a fair and impartial administrative tribunal. US Const, Am XIV; Const 1963, art 1, § 17.

At the time of the hearing, the composition of the appeal board was governed by MCL 418.251(1); MSA 17.237(251)(1):

"A worker's compensation appeal board is created, referred to in this act as the board. The board shall consist of 15 members, a majority of whom shall be attorneys at law licensed to practice in the courts of this state. Of the board members, 6 shall be representative of employee interests in the state, 6 members shall be representative of employer interests of the state, and 3 members shall be representative of the general public."

MCL 418.261(2); MSA 17.237(261)(2) provides for

"A. 'Are you going to rest? What are you doing? You're not doing anything? Come and shine the silverware.' "

the rotation of individual members of the board among the panels:

"A matter pending on review shall be assigned to a panel of 3 members of the board for disposition. The composition of panels shall be alternated so that each member of the board serves on panels with other members of the board with a frequency which is as substantially equal as possible. The decision reached by a majority of the assigned 3 members shall be the final decision of the board. If a majority of the assigned 3 members are unable to agree, the matter shall be reviewed by the entire worker's compensation appeal board."

Until recently, this rotation was conducted in a completely random fashion. Under this system, certain panels contained two or more representatives of employer interests, or two or more representatives of employee interests (as in the case before us).

In *Pitoniak v Borman's, Inc,* 104 Mich App 718; 305 NW2d 305 (1981), a panel of this Court rejected the same argument advanced by the defendants in the instant case. The *Pitoniak* Court based its decision on *Crampton v Dep't of State,* 395 Mich 347, 351; 235 NW2d 352 (1975), in which the Supreme Court listed four situations presenting a sufficiently serious possibility of prejudice by a decision-maker to constitute a denial of due process.

"where the * * * decision-maker

"(1) has a pecuniary interest in the outcome;

"(2) 'has been the target of personal abuse or criticism from the party before him';

"(3) is 'enmeshed in [other] matters involving [the party before him] * * *'; or

"(4) might have prejudged the case because of prior

participation as an accuser, investigator, fact finder or initial decisionmaker." (Footnotes omitted.)

We agree with the *Pitoniak* Court that none of the four situations listed in *Crampton* is applicable to the case at bar. However, the *Pitoniak* Court incorrectly assumed that the list of intolerable situations set forth in *Crampton* was intended to be exhaustive. We hold that a situation in which a majority of a decision-making panel is strongly identified and aligned[2] with one of the parties (but not the other) amounts to a denial of due process.

Clearly, "representatives of employee interests" are, *by definition,* identified and aligned with the interests of employees who appear before the Workers' Compensation Appeal Board.[3] Accordingly, we hold that the defendants were denied their due process right to an impartial decision-maker.

We believe that it would impose no greater fiscal or administrative burden[4] on the state to provide for an alternative procedure presenting an im-

[2] "We do not suggest that police officers and prosecutors are not fair-minded. But they are deeply and personally involved in the fight against law violators. As law enforcement officials they are *identified and aligned* with the state as the adversary of the citizen who is charged with violation of the law." (Emphasis supplied.) *Crampton, supra,* 357.

[3] Of course, we would not hesitate to apply the same analysis to a panel containing a majority of representatives of employer interests.

[4] See *Mathews v Eldridge,* 424 US 319, 335; 96 S Ct 893; 47 L Ed 2d 18 (1976):

"[I]dentification of the specific dictates of due process generally requires consideration of three distinct factors; First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved *and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.* See *e.g., Goldberg v Kelly* [397 US 254, 263-271; 90 S Ct 1011; 25 L Ed 2d 287 (1970)]." (Emphasis supplied.)

mensely smaller risk of prejudice: namely, providing for panels composed of one representative each of employee and employer interests and one representative of the general public.[5] The validity of the above proposition is scarcely debatable in light of the Legislature's recent adoption of such an alternative procedure:

"(2) A matter pending on review shall be assigned to a panel of 3 members of the board for disposition, *with each panel comprised of 1 member each of the employee, employer, and general public representatives appointed pursuant to section 251.* The decision reached by a majority of the assigned 3 members shall be the final decision of the board." MCL 418.261(2); MSA 17.237(261)(2), as amended by 1980 PA 357.

Where an alternative procedure posing a much smaller risk of prejudice by a decision-maker will impose no greater administrative burden on the state, it should not be necessary to prove that erroneous deprivations are likely under the present procedure, but only that the present procedure poses a substantial risk of bias in the decision-maker. We find that the defendants have made such a showing; consequently, they are entitled to a new hearing before the Workers' Compensation Appeal Board.

Reversed and remanded for further proceedings in accordance with this opinion. We do not retain

---

[5] We note that the *Pitoniak* panel implicitly conceded that alternative procedures would not significantly increase the fiscal and administrative burden on the state:

"The third factor enumerated in *Mathews, supra,* the state's proprietary and administrative interests in maintaining the present system, is not a substantial consideration in this case. Unlike *Mathews,* in which a substantial change in administrative procedures would have resulted from a holding in favor of the plaintiff, the instant change in the board's makeup would not significantly alter appellate practice within the WCAB." *Pitoniak, supra,* 728, fn 1.

jurisdiction. No costs, a public question being involved.

Cynar, J. *(concurring)*. In voting to reverse herein, I am convinced that the probability of actual bias on the part of the decision-maker was too high to be constitutionally tolerable. As a participant in *Pitoniak v Borman's, Inc,* 104 Mich App 718; 305 NW2d 305 (1981), I believe the result reached in *Pitoniak* was not correct.