WILLIAMS v HOFLEY MANUFACTURING COMPANY

Docket No. 79949. Argued October 9, 1987 (Calendar No. 12). Decided June 9, 1988. Rehearing denied 431 Mich 1202.

Robert Williams sought workers' compensation benefits, alleging injuries suffered in the course of his employment with the Hofley Manufacturing Company. A hearing referee granted benefits, and the Workers' Compensation Appeal Board affirmed. The Court of Appeals, DANHOF, C.J., and CYNAR and SHEPHERD, JJ., denied leave to appeal (Docket No. 95770). The Supreme Court granted leave to appeal, limited to the issue whether the defendant was denied due process of law because of the composition of the two-member appeal board panel.

In an opinion by Justice BOYLE, joined by Justices LEVIN, CAVANAGH, and ARCHER, the Supreme Court *held:*

Use of two-member interest-designated panels of the Workers' Compensation Appeal Board does not violate the procedural due process rights of litigants under the United States or Michigan Constitutions.

1. Whether procedural due process guarantees are applicable in a particular case depends on the presence of property or liberty interests. A money judgment against a defendant is a deprivation of property; a cause of action, in itself, is a species of protected property. In this case, to the extent the procedures involved would affect the ability of the defendant to present a legitimate defense, its property rights are impaired.

2. The legislative purpose in creating the Workers' Compensation Appeal Board was to establish a board of independent stature, whose members would exercise professional judgment in hearing workers' compensation appeals. The status of the members was to be representative of employees, employers, and the general public, i.e., typical of professionals in the field employed or retained by the particular interest group. The representative nature of the board members is not interpreted

REFERENCES

Am Jur 2d, Workmen's Compensation §§ 16, 26, 613 *et seq.,* 630, 631.

See the Index to Annotations under Due Process; Workers' Compensation.

as creating a continuing agency relationship of a member with a particular interest group, but as an attempt to develop a board which is fully reflective of the naturally divergent views in workers' disability compensation law. The members are not required to be, and may not act as, agents of their respective interest groups. Rather, it is presumed that board members are unbiased.

3. Use of two-member interest-designated panels does not bind the decisions of board members, but merely insures that the membership of the board is drawn from and representative of the diverse economic interests involved in workers' compensation law. The statutory requirements for the continuing service or removal of board members ensures that there is no pecuniary interest of board members in the cases they adjudicate. Even the perception of bias is dispelled by the requirements that each two-member board contain one representative of the general public and that the failure of a two-member panel to reach a decision engenders the appointment of a third panel member from an interest group not already represented on the panel. Thus, use of the two-member interest-designated panels does not violate the procedural due process rights of litigants in workers' compensation appeals.

Affirmed.

Justice BRICKLEY, joined by Justice LEVIN, concurring in the result, stated that while the concept of interest-group representation and the interest-group imbalance of the Workers' Compensation Appeal Board are not questionable in a constitutional sense, the fact that the defendant, unlike other similarly situated employers, found himself before a panel composed so as to place him at a disadvantage is unfair. It is not the weighting of the panel, but the irrational manner in which the defendant was singled out for a less favorable and receptive panel than others similarly situated that raises a constitutional question. However, in this case the defendant did not raise an equal protection challenge, and no question of due process bias is present.

Chief Justice RILEY, joined by Justice GRIFFIN, dissenting, stated that, while representative designations of Workers' Compensation Appeal Board members do not create agency relationships between the members and the interest groups represented, the interest designations reflect the knowledge, experience, interest, and alignment of the board members with the particular groups. Although a member of one interest designation can judge the merits of a case brought by a member of the other interest group, it is clear that a board member will use

past experience and alignments in reaching a decision, and this may tip the balance in some cases in favor of the board member's interest designation. When a panel is not balanced, due process is violated. Since representatives are, by definition, aligned and identified with the interests of members of their interest groups who appear before the board, in order to reduce the risk of prejudice, a two-member panel should be composed of either one employee and one employer representative or two general-public representatives.

1. WORKERS' COMPENSATION — DUE PROCESS — WORKERS' COMPENSA-
TION APPEAL BOARD — COMPOSITION OF PANELS.

Use of two-member interest-designated panels in appeals before the Workers' Compensation Appeal Board does not violate the procedural due process rights of the litigants (US Const, Am XIV, Const 1963, art 1, § 17).

2. WORKERS' COMPENSATION — DUE PROCESS — WORKERS' COMPENSA-
TION APPEAL BOARD — DEFENSE.

In an appeal before the Workers' Compensation Appeal Board, to the extent the procedures involved affect a party's ability to present a legitimate defense, a property right to which due process guarantees are applicable is impaired (US Const, Am XIV, Const 1963, art 1, § 17).

*Kozlow, Walkon & Friedman, P.C.* (by *Robert A. Kozlow*), for the plaintiff.

*Plunkett, Cooney, Rutt, Watters, Stanczyk & Pedersen* (by *Jonathan T. Kopit* and *Paul F. Paternoster*) for the defendant.

BOYLE, J. We are asked in this appeal to consider a procedural due process challenge to the constitutionality of two-member, interest-designated panels of Michigan's Workers' Compensation Appeal Board as provided in 1985 PA 103, § 261, MCL 418.261; MSA 17.237(261).[1] We conclude that

---

[1] Although Justice BRICKLEY has expressed his view as to the constitutionality of this statute under the Equal Protection Clause of Const 1963, art 1, § 2, and US Const, Am XIV, no such issue has been raised, preserved, or briefed by the parties. As we have previously held, constitutional issues not raised or briefed below will not be addressed by this Court. *Butcher v Dep't of Treasury,* 425 Mich 262,

use of these designated panels does not violate the Due Process Clauses of US Const, Am XIV and Const 1963, art 1, § 17. We therefore affirm the decision of the appeal board's award of benefits to the plaintiff in this matter.

I

The plaintiff was employed by the defendant from the period of August 31, 1978, until March 19, 1980. On June 26, 1980, he filed a petition for hearing with the Bureau of Workers' Disability Compensation, alleging an injury to his right arm, an injury to his lower back, and aggravation of a nervous condition. By order of the bureau dated July 31, 1981, the plaintiff was awarded a closed period of disability benefits commencing on his last day of work and ending on November 25, 1980.

The defendant appealed the decision of the bureau, contesting the bureau's findings regarding a personal injury, the date of injury, and the effect of defendant's May 16, 1980, offer of favored work.[2] The appeal board affirmed in an opinion and order dated September 8, 1986. The board's opinion was written by member Sheila H. Hughes, a designated representative of the general public. Board member Ramona L. Fernandez, a designated representative of employee interests, concurred in the opinion.

The defendant applied for leave to appeal in the

276; 389 NW2d 412 (1986). The *Butcher* plaintiff's subsequent appeal to the United States Supreme Court also was dismissed for want of a properly presented federal question. 479 US 1024; 107 S Ct 864; 93 L Ed 2d 821 (1987). Indeed, in our view, the *Butcher* appellants presented a much better argument for preservation, since they had at least raised/briefed their equal protection issue in this Court.

[2] The bureau made no specific finding regarding favored work, but by implication found that the plaintiff's refusal was reasonable. See, generally, *Bower v Whitehall Leather Co,* 412 Mich 172; 312 NW2d 640 (1981).

Court of Appeals, arguing that the two-member appeal board panel was unconstitutional, that the appeal board had erred as a matter of law in finding a work-related personal injury, and in failing to suspend the plaintiff's benefits for his refusal of favored work. The Court of Appeals denied leave to appeal in an order dated November 26, 1986. Defendant subsequently applied for leave to appeal in this Court and, in an order dated June 30, 1987, we granted leave, limited to the issue whether the defendant was denied due process of law because of the composition of the two-member appeal board panel.[3]

II

At the time of its inception in 1912, the Industrial Accident Board, predecessor of the current WCAB, was composed of only three members who sat as a single appeal panel.[4] The Industrial Accident Board members were not designated by interest group, although the act specified that no more than two members of the board could belong to the same political party.[5] 1947 PA 357 abolished the Industrial Accident Board and created a four-member Workmen's Compensation Commission.[6] The

[3] In *Williams v Chrysler Corp,* 159 Mich App 8; 406 NW2d 222 (1987), the Court of Appeals held that the use of a two-member appeal board panel consisting of one employee representative and one representative of the general public was a violation of the defendant-employer's right to procedural due process. Since the operative facts of that opinion and this opinion are identical, we necessarily reach the same issue. However, we expressly decline to reach the issue suggested by Judge CYNAR in dissent: Whether the third panel member's "controlling" decision, in the event that a two-member panel cannot reach a decision, would violate the litigant's right to procedural due process. The issue was not actually presented in *Williams v Chrysler Corp,* nor is it presented in this appeal.

[4] 1912 (1st Ex Sess) PA 10, part 3.

[5] 1912 (1st Ex Sess) PA 10, part 3, § 1.

[6] 1947 PA 357, ch I, § 1.

commission continued to sit as a single appeal panel. Its members were not designated by interest group, and the party qualification provision of the Industrial Accident Board was deleted.[7]

1955 PA 62 abolished the commission and created a three-member Workmen's Compensation Appeal Board.[8] Board members were not designated by interest group or party. The appeal board continued to review the decisions of the hearing referees as a single panel.[9]

1965 PA 139 expanded the appeal board to seven members[10] and divided the board into rotating four-member hearing panels.[11] Under the 1965 amendment, board members' panel assignments were alternated so that members served with each other on a substantially equal basis. Again, board members were not designated by interest group or party affiliation. 1973 PA 73 further expanded the appeal board to eleven members, with five-member hearing panels, but the procedure was otherwise unchanged.[12]

1978 PA 456 further expanded the appeal board to fifteen members and, for the first time, required appeal board members to be appointed from designated employer, employee, and general public interest groups.[13] Hearing panels were reduced to three members, although panel members continued to be alternated without regard to their interest designation. *Id.* This procedure necessarily resulted in some hearing panels which were comprised solely of members of one designated interest

[7] 1947 PA 357, ch I, §§ 1, 6.

[8] 1955 PA 62, § 9.

[9] 1955 PA 62, § 11.

[10] 1965 PA 139, § 9.

[11] 1965 PA 139, § 11.

[12] 1973 PA 73, §§ 251, 261(2).

[13] 1978 PA 456, § 251.

group. It also spawned several constitutional challenges on due process grounds.[14] The statute was amended again in 1980 to require that the three-member hearing panels be comprised of one member from each of the employee, employer, and general public interest groups.[15]

1985 PA 103 contains the most recent amendment of appeal board procedure and the statutory provision challenged by the defendant. 1985 PA 103 provides in pertinent part:

> Except as otherwise provided for in this act, a matter pending review before the appeal board shall be assigned to a panel of 2 members of the board for disposition, with each panel comprised of 1 member each from the employee and employer representatives, the employee and general public representatives, the employer and general public representatives, or 2 members representative of the general public. The decision reached by the assigned members of a panel shall be the final decision of the board. If the members of a panel cannot reach a decision, the chairperson of the board shall assign a third panel member to review the matter. The third member shall be from a designated representative group that is not already represented on the panel, except for a panel of 2 members representative of the general public in which case the third member shall be a representative of the general public. The decision of the third member shall be controlling and shall be considered to be the final decision of the board. [MCL 418.261(2); MSA 17.237(261)(2).]

The defendant argues that the "unbalanced"

---

[14] *Pitoniak v Borman's, Inc,* 104 Mich App 718; 305 NW2d 305 (1981), lv den 411 Mich 1049 (1981) (constitutional); *Warren v Motor Wheel Corp,* 110 Mich App 731; 313 NW2d 286 (1981), lv den 411 Mich 1049 (1981) (constitutional); *Vayiar v Vic Tanny Int'l,* 114 Mich App 388; 319 NW2d 338 (1982) (unconstitutional); *Ratliff v General Motors Corp,* 127 Mich App 410; 339 NW2d 196 (1983), lv den 419 Mich 932 (1984) (constitutional).

[15] 1980 PA 357, § 261(2).

appeal board panels instituted by 1985 PA 103 created a risk of bias which deprived it of the right to procedural due process. It is well established, however, that the requirements of procedural due process are triggered only by the implication of protected property or liberty interests, *Bd of Regents of State Colleges v Roth,* 408 US 564, 569; 92 S Ct 2701; 33 L Ed 2d 548 (1972); *Perry v Sindermann,* 408 US 593, 599; 92 S Ct 2694; 33 L Ed 2d 570 (1972). It is only when a protected interest has been found that we may proceed to determine what process is due. *Logan v Zimmerman Brush Co,* 455 US 422, 428; 102 S Ct 1148; 71 L Ed 2d 265 (1982). Therefore, we must first consider what, if any, protected interest the defendant has in this litigation.

### III

The applicability of procedural due process guarantees depends initially on the presence of a "property" or "liberty" interest within the meaning of the Fifth or Fourteenth Amendment. *Arnett v Kennedy,* 416 US 134, 165; 94 S Ct 1633; 40 L Ed 2d 15 (1974). However, as the United States Supreme Court has explained:

> To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it. It is a purpose of the ancient institution of property to protect those claims upon which people rely in their daily lives, reliance that must not be arbitrarily undermined. It is a purpose of the constitutional right to a hearing to provide an opportunity for a person to vindicate those claims.
>
> Property interests, of course, are not created by the Constitution. Rather, they are created and

their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits. [*Roth, supra,* 577. See *Bundo v Walled Lake,* 395 Mich 679, 692; 238 NW2d 154 (1976).]

We need not consider whether the process involved in this claim impinged upon any liberty interest, since we conclude that the defendant has a property interest in this litigation. It is beyond dispute that a money judgment rendered in this litigation against the defendant would deprive it of property. Moreover, the United States Supreme Court has held that a cause of action is, in itself, a species of property protected by the Fourteenth Amendment's Due Process Clause. *Logan, supra,* p 428. *Mullane v Central Hanover Bank & Trust Co,* 339 US 306, 313; 70 S Ct 652; 94 L Ed 865 (1950). As the *Logan* Court explained:

This conclusion is hardly a novel one. The Court traditionally has held that the Due Process Clauses protect civil litigants who seek recourse in the courts, either as defendants hoping to protect their property or as plaintiffs attempting to redress grievances. In *Societe Internationale v Rogers,* 357 US 197 [78 S Ct 1087; 2 L Ed 2d 1255] (1958), for example—where a plaintiff's claim had been dismissed for failure to comply with a trial court's order—the Court read the "property" component of the Fifth Amendment's Due Process Clause to impose "constitutional limitations upon the power of courts, even in aid of their own valid processes, to dismiss an action without affording a party the opportunity for a hearing on the merits of his cause." *Id.,* at 209. See also *Hammond Packing Co v Arkansas,* 212 US 322, 349-351 [29 S Ct 370; 53 L Ed 530] (1909) (power to enter default judgment); *Hovey v Elliott,* 167 US 409 [17 S Ct

841; 42 L Ed 215] (1897) (same); *Windsor v Mc-Veigh,* 93 US 274 [23 L Ed 914] (1876) (same). Cf. *Wolff v McDonnell,* 418 US 539, 558 [94 S Ct 2963; 41 L Ed 2d 935] (1974). Similarly, the Fourteenth Amendment's Due Process Clause has been interpreted as preventing the States from denying potential litigants use of established adjudicatory procedures, when such an action would be "the equivalent of denying them an opportunity to be heard upon their claimed right[s]." *Boddie v Connecticut,* 401 US 371, 380 [91 S Ct 780; 28 L Ed 2d 113] (1971). [455 US 429-430.]

Thus, to the extent that the procedure involved in this litigation would affect the ability of the defendant to present a legitimate defense, the defendant's property rights are also impaired.[16]

### IV

Before continuing with the analysis of the statute under US Const, Am XIV and Const 1963, art 1, § 17, we must first return to the statute itself to determine in what way it affects the defendant's property rights. It is ultimately the responsibility of this Court to interpret Michigan law. *Hortonville School Dist v Hortonville Ed Ass'n,* 426 US 482, 488; 96 S Ct 2308; 49 L Ed 2d 1 (1976).

Of pivotal importance in this case are the statutory requirements for the appointment and service of appeal board members. Our primary objective in reviewing the statutory requirements is, of course, to discover the legislative intent. *State Treasurer v Wilson,* 423 Mich 138, 143; 377 NW2d 703 (1985); *Hiltz v Phil's Quality Market,* 417 Mich 335, 343; 337 NW2d 237 (1983). In doing so, we bear in mind that every statute passed by the Legislature is

---

[16] Indeed, it is our conviction that both parties have a property right in the litigation, although the plaintiff would not affirmatively be deprived of any other property as a result of an adverse judgment.

presumed to be constitutional, and a reviewing court should find an act invalid only when there is no reasonable interpretation which will sustain it. *Wilson, supra,* p 146. *People v McQuillan,* 392 Mich 511, 536; 221 NW2d 569 (1974). Indeed, although the presumption is not conclusive, it is powerful enough to permit even a strained construction when necessary to save constitutionality. *Osborn v Charlevoix Circuit Judge,* 114 Mich 655, 660; 72 NW 982 (1897), *People v Bandy,* 35 Mich App 53, 57; 192 NW2d 115 (1971), lv den 386 Mich 753 (1971). 2A Sands, Sutherland Statutory Construction (4th ed), § 45.11, p 46.[17]

Section 251 of the act, MCL 418.251; MSA 17.237(251), specifies the criteria for the appointment and removal of board members. A majority must be attorneys in good standing of the State Bar of Michigan. Board members must devote their entire time to the duties of the board and may not engage in any other business or professional activity. Board members are appointed by the Governor, with the advice and consent of the Senate. A member of the appeal board may only be removed from office by the Governor for "good cause."[18] These criteria suggest that the legislative purpose was to create a board of independent stature, whose members would exercise professional judgment in hearing workers' compensation appeals.

[17] These principles of statutory interpretation are not addressed in the dissent of Chief Justice RILEY.

[18] "Good cause," as defined by statute, "shall include, but not be limited to, lack of productivity or other neglect of duties." MCL 418.251(1); MSA 17.237(251)(1). Although the issue is not raised in this appeal, the doctrine of *ejusdem generis* suggests that other examples of good cause would similarly be limited to examples of professional malfeasance and not the content of decisions. See *Poletown Council v Detroit,* 410 Mich 616, 635; 304 NW2d 455 (1981), 2A Sands, Sutherland Statutory Construction (4th ed), §§ 47.18-47.19, pp 117-182.

The more difficult criterion for appointment is the representative status of board members. In this regard, the statute provides:

> [O]f the board members, 5 shall be representative of employee interests in the state, 5 members shall be representative of employer interests of the state, and 5 members shall be representative of the general public. [MCL 418.251(1); MSA 17.237(251)(1).]

We acknowledge that the word "representative" is often used in a manner synonymous with "agent." However, the word is also frequently intended as a synonym for a "typical example or specimen." *The Random House College Dictionary* (rev ed). In the latter sense, board members would be "representative" of a particular interest group if they were typical professionals in the field employed or retained by the particular interest group. We note that the latter meaning of "representative" is more consistent with the adjectival use of the word in the statute. 2A Sands, Sutherland Statutory Construction (4th ed), § 47.01, p 118. We further note that the latter interpretation of this word is more consistent with the other criteria for appointment or removal of board members which suggest intent to promote independent decision making. Thus, we do not interpret the representative nature of board members under the statute as the creation of a continuing agency relationship with a particular interest group, but as an attempt by the Legislature to develop a board which is fully reflective of the naturally divergent views in workers' disability compensation law.

Turning from the intrinsic to the extrinsic indicia of legislative purpose, we are again reminded that workers' compensation law in Michigan is the reconciliation of divergent economic interests. The

act itself is the product of an historic compromise in which employers relinquished their common-law defense, employees sacrificed their right to full common-law damages, and both gained a system in which claims could be resolved in a more simplified, orderly, and assured manner.[19] The continued vitality of this compromise requires a continuing dialogue with representation of the interests of employee, employer, and the general public. This interest is promoted by drawing board members from these diverse interest groups.

In our view, representation of an agency sort does not follow inevitably or logically from a statutory requirement that a specified balance of board members be drawn as "representative" of particular interest groups. Advocacy is an inherent characteristic of the practice of law and specialization is inescapable in modern business. To condemn a nominee who is representative of a particular interest group is to foreclose experience as a criterion for appointment.

As Professor Kenneth Culp Davis has explained in his classic treatise on administrative law:

> If . . . "bias" and "partiality" be defined to mean the total absence of preconceptions . . . then no one has ever had a fair trial and no one ever will. The human mind, even at infancy, is no blank piece of paper. We are born with predispositions. . . . Every habit constitutes a prejudgment. . . . Interest, points of view, preferences, are the essence of living. . . . An "open mind," in the sense of a mind containing no preconceptions whatever, would be a mind incapable of learning anything, would be that of an utterly emotionless human being, corresponding roughly to the psychiatrist's descriptions of the feeble-minded. . . . [E]very human society has a multi-

---

[19] See *Crilly v Ballou,* 353 Mich 303, 308-309; 91 NW2d 493 (1958).

tude of established attitudes . . . but many of them represent the community's most cherished values and ideals. . . . Much harm is done by the myth that, merely by putting on a black robe and taking the oath of office as a judge, a man ceases to be human and strips himself of all predilections, becomes a passionless thinking machine. [3 Davis, Administrative Law (2d ed), § 19.3, pp 378-379, quoting *In re Linahan, Inc*, 138 F2d 650, 651 (CA 2, 1943).]

These authorities are not cited in any attempt to foreclose the constitutional challenge raised by the defendant in this matter. They instead, we believe, provide a broader perspective for our construction of the statute. The word "representative" is, no less than any other expression of legislative purpose, symbolic.[20] 3A Sands, Sutherland Statutory Construction (4th ed), p 171. We decline to give the word any talismanic powers, particularly on the basis of a definition which is grammatically awkward, analytically deviant, or constitutionally dubious. In our view, § 251 of the act, MCL 418.251; MSA 17.237(251), merely requires that board members be typical of the professionals active in various aspects of workers' compensation law. We do not suggest that this typicality disappears once board members commence their duties. The gravamen of this due process challenge is the requirement of the succeeding § 261, MCL 418.261; MSA 17.237(261), that panel members be designated by interest group. We do observe that the statute requires no representation in the agency sense, and indeed, that such representation would appear to be in violation of the statutory duty of board

---

[20] Of all words, it seems most likely that the Legislature would be cognizant that "representative" is subject to more than one interpretation.

members.[21] It is with this construction of the act that we return to the constitutional issue raised by the defendant.

V

As we have previously noted, the defendant argues that it was deprived of its right to due process of law as required by US Const, Am XIV and Const 1963, art 1, § 17 by the appeal board panel consisting of one employee representative and one representative of the general public. The defendant contends that this procedure contains a constitutionally impermissible level of bias resulting from three interests: 1) a pecuniary interest resulting from the limited, four-year terms of appeal board members, 2) a statutorily designated interest, and 3) a perceived interest.

Numerous opinions of the United States Supreme Court have held that biased decision making offends the constitutional right to procedural due process. See, e.g., *Tumey v Ohio,* 273 US 510; 47 S Ct 437; 71 L Ed 749 (1927), *In re Murchison,* 349 US 133; 75 S Ct 623; 99 L Ed 942 (1955), *Ward v Village of Monroeville,* 409 US 57; 93 S Ct 80; 34 L Ed 2d 267 (1972), *Gibson v Berryhill,* 411 US 564; 93 S Ct 1689; 36 L Ed 2d 488 (1973), *Connally v Georgia,* 429 US 245; 97 S Ct 546; 50 L Ed 2d 444 (1977), and *Aetna Life Ins Co v Lavoie,* 475 US 813; 106 S Ct 1580; 89 L Ed 2d 823 (1986). This Court has similarly held that unbiased or impartial decision making is a basic requirement of due process. *Crampton v Dep't of State,* 395 Mich 347, 351; 235 NW2d 352 (1975), *Morris v Metriyakool,* 418 Mich 423, 432; 344 NW2d 736 (1984), and *Livonia v Dep't of Social Services,* 423 Mich 466,

---

[21] Good cause for removal of board members, as noted above, includes neglect of duties. MCL 418.251(1); MSA 17.237(251)(1).

508; 378 NW2d 402 (1985). The significance of this principle was explained by the United States Supreme Court as follows:

> The Due Process Clause entitles a person to an impartial and disinterested tribunal in both civil and criminal cases. This requirement of neutrality in adjudicative proceedings safeguards the two central concerns of procedural due process, the prevention of unjustified or mistaken deprivations and the promotion of participation and dialogue by affected individuals in the decisionmaking process. See *Carey v Piphus,* 435 US 247, 259-262, 266-267 [98 S Ct 1042; 55 L Ed 2d 252] (1978). The neutrality requirement helps to guarantee that life, liberty, or property will not be taken on the basis of an erroneous or distorted conception of the facts or the law. See *Mathews v Eldridge,* 424 US 319, 344 [96 S Ct 893; 47 L Ed 2d 18] (1976). At the same time, it preserves both the appearance and reality of fairness, "generating the feeling, so important to a popular government, that justice has been done," *Joint Anti-Fascist Committee v McGrath,* 341 US 123, 172 [71 S Ct 624; 95 L Ed 817] (1951) (Frankfurter, J., concurring), by ensuring that no person will be deprived of his interests in the absence of a proceeding in which he may present his case with assurance that the arbiter is not predisposed to find against him. [*Marshall v Jerrico,* 446 US 238, 242; 100 S Ct 1610; 64 L Ed 2d 182 (1980).]

The right to due process of law by a neutral and detached decisionmaker is a most important constitutional right.[22] However, legal judgments are not made in the atmosphere of a bell jar, nor is the judicial mind nurtured on abstraction. Thus,

---

[22] Some commentators have gone so far as to suggest that a neutral decisionmaker may be both a necessary and *sufficient* requirement for satisfaction of procedural due process. See Redish & Marshall, *Adjudicatory independence and the values of procedural due process,* 95 Yale L J 455 (1986).

as the United States Supreme Court explained in *Tumey,* and we noted in *Morris:*

> All questions of judicial qualification may not involve constitutional validity. Thus matters of kinship, personal bias, state policy, remoteness of interest, would seem generally to be matters merely of legislative discretion. [*Tumey, supra,* p 523. See also *Morris, supra,* p 437.]

An abuse of discretion involves far more than a difference in judicial opinion, *Spalding v Spalding,* 355 Mich 382, 384; 94 NW2d 810 (1959), and we are not empowered to rework a legislative compromise merely because it falls short of the ideal. Due process is flexible and calls for such procedural protections as the particular situation .demands. *Schweiker v McClure,* 456 US 188; 102 S Ct 1665; 72 L Ed 2d 1 (1982). Therefore, as we turn toward the examination of this defendant's due process challenge, we begin with the presumption that board members are unbiased, *Schweiker, supra,* 456 US 195, and proceed with an emphasis upon the particular sources of bias alleged.

The defendant first alleges that the composition of this board, one employee representative and one representative of the general public, creates an impermissible level of bias because of the *pecuniary* interest of the employee representative.[23] The defendant points out that appeal board members are appointed for a fixed term of four years. See MCL 418.251(1); MSA 17.237(251)(1). The defendant argues that the failure of an appeal board member to act according to his designated interest would jeopardize the member's opportunity for

[23] It has not escaped our notice that no pecuniary interest on the part of the general public representative is alleged, although we would momentarily defer our analysis of the effect this may have on the decisional process.

reappointment. Thus, the defendant concludes, the employee representative's interest in a continuing salary has created a substantial risk of bias, tainting the appeal board's decision in this case.

It is beyond dispute that even an indirect pecuniary interest may deprive a decisionmaker of the impartiality essential to due process. *Tumey, supra,* p 523; *Ward, supra,* p 60; *Gibson, supra,* p 569. However, not every potential pecuniary interest is sufficient to render a decisionmaker impermissibly biased. The United States Supreme Court's opinion in *Schweiker* illustrates this point with facts closely analogous to those of the instant case.

In *Schweiker,* three Medicare recipients raised a due process challenge attacking the impartiality of the hearing officers employed by the private carriers who administer the program under contract with the federal government. The *Schweiker* Court observed that the salaries of the hearing officers, as well as the claims of the insureds, were paid by the federal government. A unanimous Court in *Schweiker* rejected the allegation of a pecuniary bias, while acknowledging that most of the hearing officers were former employees of the carrier, that their appointments as hearing officers were at the discretion of the carrier, and that their continued service was at the will of the carriers.

Considerably more independence is exercised by workers' compensation appeal board members under the current Michigan law. While it is likely that many employer representatives will be drawn from the ranks of carriers or self-insureds, they are not obliged to continue their service while hearing appeals. Indeed, as discussed in part IV, board members are *forbidden* by statute from engaging in any other business or professional activity and must devote their entire time to personally performing the duties of their office. More-

over, appeal board members are not employees at will, but may only be removed for cause.

To conclude that board members have a pecuniary bias is to assume not only that board members will ignore their statutory responsibilities because of past associations with particular interest groups, but also that board members will value their future employment with the board above fair and impartial decision making. We can accept neither of these assumptions. First, we find persuasive the *Schweiker* Court's observation that "The fact that a hearing officer is or was a carrier employee does not create a risk of partiality analogous to that possibly arising from the professional relationship between a judge and former partner or associate." *Id.,* p 197, n 11. Second, there can be no interest in future employment as an interest group representative under this statute. Effective July 1, 1989, the appeal board is abolished. MCL 418.266; MSA 17.237(266). As of that date, all cases pending before the appeal board which have not yet been reviewed must be transferred to the newly created appellate commission. MCL 418.266(3); MSA 17.237(266)(3). The appellate commissioners are not appointed according to interest designation, MCL 418.274; MSA 17.237(274), and any interim appointee to the appeal board must be a designated representative of the general public. MCL 418.251(2); MSA 17.237(251)(2). Therefore, whatever attenuated pecuniary interest that may have existed in reappointment no longer exists in appeal board members.

Our construction of the statutory provisions for appointment, service, and removal of board members requires that we also reject the defendant's allegation of a statutorily designated interest. We find nothing in the statute which requires a continuing advocacy of the representative's interest

group, much less the requirement that board members are bound to decide cases on the basis of the views of the interest group from which they emerge.

Finally, we must reject the defendant's contention that the statute is rendered unconstitutional by the mere perception of bias. We believe that the perception of fairness *is* important to the function of a democratic society, and we are mindful of the United States Supreme Court's admonishment that "To perform its high function in the best way 'justice must satisfy the appearance of justice.'" *In re Murchison, supra,* p 136, quoting *Offutt v United States,* 348 US 11, 14; 75 S Ct 11; 99 L Ed 11 (1954). However, the perception upon which the defendant bases its argument is in turn based upon an erroneous construction of the statute in which board members are continuing advocates of the interest group from which they are drawn. We decline to equate a perception of this sort with the reality of the statute we have so carefully examined. To do so would be to ignore not only the purpose of the Legislature in this instance, but also the role of the Legislature in our constitutional system. *Murchison* does not require such a result, and we believe that adoption of the foreshortened methodology urged by the defendant actually runs contrary to the spirit of order and fairness embodied in the Due Process Clauses of US Const, Am XIV and Const 1963, art 1, § 17. *Marshall, supra,* p 242.

Properly perceived, §§ 251 and 261 of the Workers' Disability Compensation Act draw upon the expertise of persons employed among the various interest groups in Michigan's workers' compensation system in order to create a competent and representative board. The past affiliations of indi-

vidual board members do not bind their decisions during their tenure as board members. Moreover, the statute is carefully drawn so that a general public representative provides a check upon the decision of either an employer or an employee representative. The presence of a clearly neutral party on each of the two-member panels should completely dispel any perception of bias in this decision-making process. If we assume,[24] contrary to established law,[25] that an employee representative is somehow constrained to decide in favor of an employee, it would be logical to assume that employer representatives are equally bound and that the creation of a split decision by the general public representative would guarantee a decision favorable to the employer. Thus, to the extent that employer or employee representatives are perceived as biased, the decision of the general public representative must be perceived as controlling.[26] In our view, a thoughtful perception of the statute should lead to the conclusion that the scheme employed by the Michigan Legislature is designed to promote balanced, impartial decision making.

We have therefore rejected each of the defendant's assertions of bias in the context of the two-member, interest-designated Workers' Compensation Appeal Board. We conclude the scheme employed by the Legislature in this instance is fully protective of the rights of the litigants in workers'

---

[24] No evidence has been presented in this case indicating that there is actual bias on the part of individual board members.

[25] *Schweiker, supra,* p 195.

[26] In *Aetna Life Ins Co v Lavoie, supra,* the United States Supreme Court declined to consider whether a decision need be vacated when a disqualified judge's decision is mere surplusage. We also decline to consider this question, since we have previously concluded that an employer representative is not disqualified by bias. Our discussion touches on the issue only in the context of the *perception* of bias.

disability compensation under US Const, Am XIV and Const 1963, art 1, § 17.[27]

CONCLUSION

Litigants in workers' compensation proceedings under Michigan law have a cognizable property interest in their claims under US Const, Am XIV. However, the use of two-member, interest-designated panels, as set forth in 1985 PA 103, MCL 418.261; MSA 17.237(261), does not bind the decisions of board members, but merely ensures that the membership of the board is drawn from and representative of the diverse economic interests involved in workers' compensation law. The statutory requirements for the continuing service or removal of board members ensures that there is no pecuniary interest of board members in the cases they adjudicate. Furthermore, even the perception of bias is dispelled by the requirements that each two-member board contain one representative of the general public and that the failure of the two-member panel to reach a decision triggers the appointment of a third panel member from an interest group not already represented on the panel.

We therefore conclude that the statute does not violate the procedural due process rights of litigants in these proceedings under US Const, Am XIV or Const 1963, art 1, § 17. The decision of the Workers' Compensation Appeal Board is therefore affirmed.

[27] A different question might be presented were it to appear that the practical construction of the statute, as reflected in the opinions of the WCAB or otherwise, has been that the employer and employee members of the WCAB do indeed regard themselves as advocates and not as impartial decisionmakers.

Because constitutional questions are beyond the purview of the WCAB, such a showing can probably only be made in an action for declaratory judgment.

LEVIN, CAVANAGH, and ARCHER, JJ., concurred with BOYLE, J.

BRICKLEY, J. (*concurring*).

I

As the majority aptly points out, personal bias and predilection live within all of us to one degree or another. Those who exercise judicial or quasi-judicial duties are no exception. We nonetheless, in our objective of achieving as much fairness as possible, build procedures and systems that are designed to minimize the effects of such shortcomings. The most obvious kinds of bias that rise to constitutional infirmity are those that arise when decision making also affects personal interests. See, e.g., *Connally v Georgia,* 429 US 245; 97 S Ct 546; 50 L Ed 2d 444 (1977). These are the easiest to identify, and also the easiest to avoid by procedures for disqualification and the like.

There are more subtle biases and interests that are more difficult to identify or to remove from the system. An example is one of the claims made by the defendant in this case when it suggests that the appeal board members are biased because, if they deviate from their economic interest identification, they will threaten their reappointment. Such an interest is of course almost always present to one degree or another for any decision-maker in any branch of government who is subject to appointment or election. This type of interest is endemic to a democratic system, and for that reason is within tolerable constitutional limits.

Not to be confused with bias are philosophical views and value judgments that also reside within all of us that do not normally disqualify a person from rendering a fair decision, even though they

influence the decisionmaker and the decision. The electorate or appointing authorities can and do elect and appoint persons of the same or divergent economic and social backgrounds and views. Boards and commissions may not discriminate or exercise bias, but they may exercise economic and social preferences in the formulation of their policies and decisions, particularly where such preferences are a part of the legislative scheme.

Workers' compensation and the systems and procedures for its implementation are examples of this. It would not necessarily be unconstitutional for the Legislature, as a matter of policy, to choose to weight decision making in favor of either employee or employer interests where it is rationally related to a legitimate government purpose. Decisions regarding how to organize a quasi-administrative body are essentially the product of the political process. However, the constitutionality of a consistently weighted procedure is not the question before us. Instead, we have before us a system that on its face is intended to give equal weight to the employee and employer interests but, at the same time, not only allows, but specifically provides, that similarly situated parties within an interest class are occasionally and randomly subjected to a different balance than others. Again, it is not the balance or the imbalance, as such, with which we should be concerned; rather, it is that the balance is shifted for some litigants. This, if anything, raises equal protection concerns in light of the fact that the change in balance is completely random and apparently without a rational basis.[1]

---

[1] *Higgins v Monroe Evening News,* 404 Mich 1, 26; 272 NW2d 537 (1978) (KAVANAGH, C.J., dissenting) (" 'Legislation is invalid on equal protection grounds if it creates classifications which are without reasonable bases and are purely arbitrary,' " quoting *Higgins v Monroe Evening News,* 70 Mich App 407, 418; 245 NW2d 769 [1976]).

II

The majority posits that the board members are not biased out of personal interests, and I agree. However, the majority reaches two further conclusions with which I do not agree. First, it concludes that board members do not represent an ongoing economic interest. Second, the majority holds that even if board members are representative of a particular interest the fact that a public member is always a member of a two-person panel cures the problem, since the worst that could happen is a tie vote which would be ultimately broken by a member of the interest that was not on the two-member panel.

A

The majority reads § 251, which is at issue in this case, as only indicating the background from which an appointee should come, not as to how the appointee shall carry out required duties. Section 251 is as follows:

A worker's compensation appeal board is created, referred to in this act as the board. Except as provided for in subsection (2), the board shall consist of 15 members, a majority of whom shall be attorneys at law who are members in good standing of the state bar of Michigan. Except as provided for in subsection (2), of the board members, 5 shall be representative of employee interests in the state, 5 members shall be representative of employer interests of the state, and 5 members shall be representative of the general public. A member of the board shall devote his or her entire time to and personally perform the duties of the office and shall not engage in other business or professional activity. The governor, with the advice and consent of the senate, shall

appoint the members for a term of 4 years, and until their successors are appointed and qualified. A vacancy shall be filled for an unexpired term in the same manner as the original appointment. The governor shall designate the chairperson of the board from among the members to serve at the pleasure of the governor. A member of the appeal board may be removed by the governor for good cause. Good cause for removal shall include, but not be limited to, lack of productivity or other neglect of duties.

Section 251 does not provide, as the majority suggests, that board members are to be appointed from a specific group, but that they then must act as purely neutral decisionmakers. Instead, the provision states that "of the board members, 5 shall *be* representative of . . . ." It is hard to believe that a newly appointed board member reading this provision of the statute would not conclude the interest to "be representative of" is the interest of those who nominated the member or the interest indicated in the appointment documents forwarded to the Senate.

If there is any doubt about the intention of the Legislature, or the understanding or expectation of the appointee, it is resolved by reading § 261 which provides that two members of the same representation designation cannot sit together on a two-person panel. What clearer public policy indication could there be that they are expected to vote from the point of view of a particular economic interest.

For these reasons, I would conclude that the board members are expected to represent a particular point of view. While the majority concludes that it would be neglect of duty for a panel mem-

ber to act as an agent of an interest group,[2] the language of the statute makes equally plausible the view that a failure to "represent" the points of view of the appointee's interest group would also constitute a neglect of duty.

B

The majority suggests for the sake of argument that even if there is ongoing representational interests on the part of the board members, it is sufficiently diluted under the scheme of § 261 because the vote of a representative of either the employer or employee interest that is adverse to a litigant of the opposite interests would be checked by the vote of the public member, thus resulting in a tie and bringing in the missing interest. I am not persuaded by this argument. Those of us who serve on multiple-person tribunals are aware of the dynamics of this kind of decision making and the influence that can be exercised by those who are present when the decision is made. As Justice Brennan stated in discussing the concerns raised where one member of a multimember court is biased,

> The description of an opinion as being "for the court" connotes more than merely that the opinion has been joined by a majority of the participating judges. It reflects the fact that these judges have exchanged ideas and arguments in deciding the case. It reflects the collective process of deliberation which shapes the court's perceptions of which issues must be addressed and, more importantly, how they must be addressed. And, while the influence of any single participant in this process can never be measured with precision, experience teaches us that each member's involve-

[2] *Ante,* p 617, n 21.

ment plays a part in shaping the court's ultimate disposition. [*Aetna Life Ins Co v Lavoie,* 475 US 813, 831; 106 S Ct 1580; 89 L Ed 2d 823 (1986) (Brennan, J., concurring).]

I cannot agree that an employer litigant who appears before a panel made up of a general public representative and an employee representative is, because of the presence of the general public member, not treated differently than most other litigants or that this difference in treatment has a rational basis.

### CONCLUSION

Despite my disagreement on these points I would not necessarily find questionable in a constitutional sense either the concept of interest-group representation or interest-group imbalance of the Workers' Compensation Appeal Board. What I do find unfair is the fact that other employers situated similarly to the defendant in every respect would have found themselves before a two-member panel comprised either of one employer representative and one representative of the general public, one employee representative and one employer representative, or two representatives of the general public. By random selection, this defendant finds himself before the only panel composition that places him at a disadvantage more than other litigants similarly situated.

It is not in my view the weighting of this panel itself, but the irrational manner in which this litigant has been singled out for a less favorable and receptive panel than others similarly situated that raises a constitutional question. However, since this would amount to an equal protection challenge and since the defendant raises only a

due process bias question which I do not find to be present here, I join the result of the majority.[3]

LEVIN, J., concurred with BRICKLEY, J.

RILEY, C.J. (*dissenting*). The foundation of the majority opinion is a rather limited view of the purpose underlying representative designations of Workers' Compensation Appeal Board members. The majority finds that interest designations do not require an agency relationship between board members and their constituency, but are designed to insure a board which reflects members who are "typical of the professionals active in various aspects of workers' compensation law." *Ante,* p 616. Thus, the majority concludes that the interest designations are intended to provide only a diversity of viewpoints and experience among board members. *Ante,* pp 614-616.

I agree with the majority that a board member's designation does not create an agency relationship between the member and the interest group represented. If that were the case, the board members would be required to act in all circumstances in such a manner as to further the interests of their constituency. Of course, that is not the case as board members are not bound by their interest designations and, in fact, often vote contrary to their specific designation.

By focusing on, and overstating, what the interest designation is not—an agency relationship—the majority obscures what the designation does reflect—knowledge, experience, interest, and alignment with the particular group being represented. This is not to imply that members of one interest designation cannot judge the merits of a case

[3] For preservation of constitutional issues see *Butcher v Dep't of Treasury,* 425 Mich 262, 276; 389 NW2d 412 (1986).

brought by a member of the other interest group. However, in so judging, it is clear that a board member will use past experience and alignments in reaching a decision regarding a case. Therefore, it is fair to conclude that a board member's knowledge and experience may tip the balance in some cases and that that slant will be in favor of the board member's interest designation.

As a result, even if I agreed with the majority regarding the limited nature of a board member's representational interest, which I do not,[1] I would find a due process violation where the panel is not balanced. In *Vayiar v Vic Tanny Int'l*, 114 Mich App 388, 392; 313 NW2d 286 (1982), the Court held that due process is violated where "a majority of a decision-making panel is strongly identified and aligned with one of the parties (but not the other) . . . ." Thus, the Court decided that a three-member WCAB panel (under the former act) comprised of two employee representatives and one employer representative was violative of due process. Because employee representatives are, *"by definition,* identified and aligned with the interests of employees who appear before the Workers' Compensation Appeal Board" the defendant em-

---

[1] That the Legislature intended a stronger representational relationship than that expressed by the majority is indicated by the legislative history of the workers' compensation act which evidences that the Legislature regards unbalanced panels to be unfair. Prior to 1980, hearing panels were assigned randomly without taking into account interest designations of the members, the result of which was that some panels were comprised of a majority of members of either particular interest group (though not necessarily solely of members of one interest designation, as stated by the majority. See *ante,* p 608-609). These unbalanced panels resulted in several constitutional challenges. See *ante,* p 609, n 14. However, in 1980, the Legislature amended the act to require that the panels include one member from each interest designation. 1980 PA 357, § 261(2). The majority notes this revision, *ante,* p 609, then blithely proceeds to ignore the obvious implication—that being a legislative acknowledgment that unbalanced panels are not particularly fair.

ployer was denied an impartial decisionmaker. *Id.* at 392.

The *Vayiar* Court was influenced by the fact that providing an alternative procedure—one member from each interest designation—would impose no greater fiscal or administrative burden on the state:

> Where an alternative procedure posing a much smaller risk of prejudice by a decision-maker will impose no greater administrative burden on the state, it should not be necessary to prove that erroneous deprivations are likely under the present procedure, but only that the present procedure poses a substantial risk of bias in the decision-maker. We find that the defendants have made such a showing; consequently, they are entitled to a new hearing before the Workers' Compensation Appeal Board. [*Id.* at 393.]

The Court in *Williams v Chrysler Corp,* 159 Mich App 8; 406 NW2d 222 (1987), addressed a due process challenge to a panel comprised precisely the same as the panel in this case. The *Williams* Court recognized that *Vayiar* was somewhat factually distinguishable but that the rationale underlying *Vayiar* applied. *Id.* at 19.

> [W]e agree that employee representatives are, by definition, aligned and identified with employee interests. . . . [W]e hold that, even though the employee representative does not constitute a majority of the WCAB panel but, in fact, is only one-half of it, Chrysler was nonetheless denied its right to a fair and impartial hearing because it must be presumed that the employee representative was already aligned with plaintiff's position. We believe that the fact that an employer representative would be added to the panel in the event of a tie vote between one member already aligned with plaintiff and a neutral member is insufficient

to overcome the initial partiality inherent in the original two-member WCAB panel. We further note that it would impose no greater financial burden on the state to provide an alternative decision-making procedure which would greatly reduce the risk of prejudice: namely, providing for two-member panels composed of either one employee and one employer representative or two general-public representatives. . . . In either case, a split may be resolved by a general public representative. [*Id.*]

I agree with the decision in *Williams*. I would vacate the opinion of the WCAB and remand this case to be decided by a WCAB panel comprised of one employee and one employer representative or two general public representatives.

GRIFFIN, J., concurred with RILEY, C.J.