ROGERS, J., delivered the opinion of the court, in which NORRIS, J., joined. COLE, J. (pp. 605-09), delivered a separate dissenting opinion.
*603 OPINION
ROGERS, Circuit Judge.
Michele Silvernail and Sarah Paquin-Dodge appeal the district court’s dismissal of their complaint alleging that the bad check collection scheme utilized by Kent County (“the County”) violated their due process rights under the United States and Michigan Constitutions. Because the challenged process was constitutionally sufficient, we affirm the judgment of the district court.
Plaintiffs wrote bad checks to merchants in Kent County. Under municipal ordinances, a $25 fee is assessed for the passing of bad checks.[1] The County contracts with Check Enforcement Unit, Inc. (“CEU”) to process dishonored checks and collect the fee. As the district court explained:
CEU’s sole business activity is the collection through its Check Operational Procedure of dishonored checks received by area merchants. CEU provides its services through contractual arrangements with various municipalities throughout the state of Michigan. Although CEU provides its services to merchants, it does so in collaboration with the municipalities’ law enforcement agencies. Merchants enroll in CEU’s Check Operational Procedure by paying CEU an $85 registration fee. When a check received by a participating merchant is dishonored, the check is forwarded to CEU by the merchant’s bank or financial institution. After CEU receives the dishonored check, it sends out a series of notices and letters to the check writer printed on the letterhead of the municipality’s law enforcement agency. These notices and letters demand payment of the check amount, bank fees, and a fee payable to the municipality. The County and CEU entered into a contract, pursuant to which CEU agreed to provide services to the County for the processing and recovery of bad checks and the investigation of bad check violations under local township bad check ordinances that were based on Michigan statutes making it unlawful to intentionally write checks drawn on accounts with insufficient funds.
Silvernail v. County of Kent, No. 1:02-CV-559, 2003 WL 1869206, at *1 (W.D.Mich. Feb.24, 2003). After receiving a dishonored check, CEU issues a “Due Process Notice” to the check writer, which demands separate payments by cashier’s check or money order for the amount of the dishonored check and bank fees (payable to the merchant) and for the $25 government assessment fee (payable to the County). The notice states that:
Violations of the check laws are administered for the Police/Sheriff Department by the Check Enforcement Unit, Inc. Repayment of the check(s) plus the bank fee and government assessment fee is required. Should you have any ques *604 tions regarding this letter or the amount due, please feel free to call [phone number] ....
The notice also cautions that “FAILURE TO MAKE PAYMENT CAN RESULT IN A WARRANT FOR YOUR ARREST.”
Plaintiffs received this notice from CEU and each paid the government assessment fee of $25. They subsequently filed the instant action in the Western District of Michigan, alleging that the County and CEU violated their due process rights under the Fourteenth Amendment to the United States Constitution and the Due Process Clause of the Michigan Constitution, because the County’s bad check collection scheme deprived them of their property—the $25 assessment fee—without adequate notice or an opportunity to be heard.[2] The defendants filed motions to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). The district court concluded that plaintiffs had failed to allege a due process violation, because they had failed to show a deprivation of property and alternatively because the process supplied was adequate. Accordingly, the district court granted the motion and dismissed the case. Plaintiffs appeal.
The district court properly dismissed plaintiffs’ complaint because the complaint failed to state a claim upon which relief could be granted.[3] To state a claim for a violation of procedural due process under 42 U.S.C. § 1983, plaintiffs must show that they were deprived of a liberty or property interest, see Bd. of Regents v. Roth, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972), and that the procedures afforded to protect that interest were insufficient under the balancing test of Mathews v. Eldridge, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). The district court ruled that plaintiffs lacked a protected interest because they voluntarily paid the $25 fee. Silvernail, 2003 WL 1869206 at *4-*5. We need not decide whether the district court was correct on that point, because plaintiffs received sufficient process even if we assume that they were deprived of their property.
The essential elements of due process are notice and an opportunity to be heard. Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 546, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985). Due process is a flexible concept, and the process required is context specific. Zinermon v. Burch, 494 U.S. 113, 127, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990). In determining what process is due under Eldridge, supra, the court must consider the nature of the private interest, the risk of an erroneous deprivation under the procedures in place and the value of any additional procedural safeguards, and the government’s interest—including the administrative burdens additional safeguards would impose.
Although the due process notices issued by CEU did not inform the check writers of the availability of a hearing or the procedure for requesting one, the district court nevertheless concluded that the notices satisfied the requirements of due *605 process because they “were reasonably calculated to inform the Plaintiffs of the allegations against them and provided a means for responding to the allegations.” Silvernail, 2003 WL 1869206 at *5. The district court noted that the private interest at stake — the $25 assessment fee — was minimal. With respect to the value of additional procedures, the district court stated:
[TJhere is no indication that additional procedural safeguards would reduce the risk of an erroneous deprivation of Plaintiffs!’] money. As indicated in the Due Process Notice, the proof of a bad check violation is the returned check itself. Plaintiffs had notice of the returned check and were provided with a telephone number to call if their checks were stolen, if their accounts had been garnished, or if there was any other reason why they should not be required to pay the Government Assessment Fee. Plaintiffs did not attempt to call the telephone number, and they have not suggested that additional safeguards would reduce the likelihood of an erroneous deprivation. Moreover, as the County Defendants note, if Plaintiffs had failed to pay the Government Assessment Fee, the County Defendants could not have deprived Plaintiffs of their property unless they made a determination to file a criminal complaint, in which case Plaintiffs would have been entitled to a full trial.
Silvernail, 2003 WL 1869206 at *6. Finally, the district court recognized that the County had a significant interest “in resolving bad check complaints outside of the criminal system, thereby reducing administrative costs associated with such violations and avoid unnecessary criminal or civil proceedings.” Requiring the County to implement additional procedures, such as a full hearing for each bad check passed in the county, would impose significant costs and administrative burdens without any accompanying benefit. Id.
We concur in the reasoning of the district court. Rather than institute burdensome criminal procedures for each bad check passed, the County has implemented a system which permits check writers to take corrective actions without criminal sanctions. Plaintiffs have not alleged that erroneous assessments of the $25 fee were not correctable by the procedures provided — a telephone call to CEU. In any event, had plaintiffs failed to pay the assessment fee, they would have been entitled to the full panoply of due process protections when and if the County instituted a criminal action to collect the fee. Accordingly, under the balancing of the interests required by Eldridge, the process provided by the County’s bad check collection scheme is constitutionally sufficient.[4] The judgment of the district court is AFFIRMED.

. The complaint alleges that "Kent County and/or various townships located therein” have enacted ordinances assessing a twenty-five dollar fee for dishonored checks. It does not appear that Kent County itself has such an ordinance, but townships within Kent County do have such ordinances. See Grand Rapids Charter Township, Michigan, Ordinance No. 348 (May 6, 1997) (prohibiting the drawing of checks without sufficient funds or on closed accounts and specifying penalties); Grand Rapids Charter Township, Michigan, Ordinance No. 349 (May 6, 1997) (providing for the collection of expenses relating to the handling and enforcement of dishonored checks); Grand Rapids Charter. Township, Michigan, A Resolution to Set the Cost Recovery Fees for Enforcement of Dishonored Checks Ordinance (May 6, 1997) (authorizing County of Kent to collect as its’ agent $3.50 per dishonored check for costs and setting contractual fee of $21.50 per dishonored check for any check enforcement unit).

. Plaintiffs filed a motion for class certification, but the district court dismissed the action without ruling on the motion.

. This court reviews de novo the district court's grant of a motion to dismiss pursuant to Rule 12(b)(6). Powell v. Jacor Communications Corp., 320 F.3d 599, 601 (6th Cir.2003). In conducting its review, the court “must construe the complaint in the light most favorable to the plaintiff, accept all of the complaint's factual allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of his claim that would entitle him to relief.” Id. at 601-02 (quoting Ziegler v. IBP Hog Market, Inc., 249 F.3d 509, 512 (6th Cir.2001)).

. The court's holding also disposes of plaintiffs’ due process claim under the Michigan Constitution, as the Michigan Constitution affords no greater protection than does the United States Constitution. See Williams v. Hofley Mfg. Co., 430 Mich. 603, 424 N.W.2d 278 (1988) (applying federal cases to, and analyzing together, claims made under the Michigan and federal due process clauses).