JULIA SMITH GIBBONS, Circuit Judge,
dissenting.
Because I disagree with the majority’s analysis and conclusions in section II.C. of the opinion and because this issue is dis-positive, I respectfully dissent. The district court recognized several grounds on which the plaintiffs’ case could be dismissed, and in order to affirm the decision of the district court, our panel need only have agreed with one of them. The plaintiffs failed to state a claim for RICO relief because they neglected to plead an injury to business or property, and, thus, the district court’s dismissal of plaintiffs’ case should be affirmed.[1]
Plaintiffs’ alleged RICO damages are that they were deprived of workers’ compensation benefits and incurred attorneys’ fees, medical-care expenses, and transportation expenses driving to and from medical care. The district court held that plaintiffs lack standing to sue under RICO because their claims for medical expenses and related pecuniary loss sustained as a result of their workplace injuries do not constitute injury to business or property under RICO. Brown v. Cassens Transp. Co. (“Brown IV”), 743 F.Supp.2d 651, 658 (E.D.Mich.2010). Because plaintiffs’ damages “unquestionably were incurred as a direct result of Plaintiffs’ on-the-job injuries,” the district court concluded that “their medical expenses, workers’ compensation benefits, medical mileage and attorneys fees are damages which are indisputably wholly derivative of their personal injuries and as such are not injuries to ‘business or property’ under RICO.” Id. at 674. I agree.
As recognized by the majority, RICO provides recovery for “[a]ny person injured in his business or property by reason of a violation of section 1962 of this chapter.... ” 18 U.S.C. § 1964(c) (emphases added). Thus, without an allegation of damages to business or property by reason of a violation of § 1962, plaintiffs will not have standing to pursue their RICO claims. Although the Supreme Court has stated “RICO is to be read broadly” in determining what injuries were actually caused by conduct that RICO was designed to deter (i.e., racketeering injuries), Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479, 497, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985), (Maj. Op. at 956), this does not eliminate the requirement to plead an injury to business or property. “ ‘The phrase business or property ... retains restrictive significance. It would, for example, exclude personal injuries suffered.’ ” Drake v. B.F. Goodrich Co., 782 F.2d 638, 644 (6th Cir.1986) (internal quotation marks omitted) (quoting Reiter v. Sonotone Corp., 442 U.S. 330, 339, 99 S.Ct. 2326, 60 L.Ed.2d 931 (1979)) (affirming district court’s denial of a motion to amend a complaint). Furthermore, this restrictive significance has been clarified to exclude both personal injuries and pecuniary losses flowing from those personal injuries. Evans v. City of Chicago, 434 F.3d 916, 926 (7th Cir.2006); see also Doe v. Roe, 958 F.2d 763, 767 (7th Cir.1992) (“The terms ‘business or property’ are, of course, words of limitation which preclude recovery for personal injuries and the pecuniary losses incurred therefrom.”); Grogan v. Platt, 835 F.2d 844, 847 (11th Cir.1988) (“[T]he pecuniary and non-pecuniary aspects of personal injury claims are not so *970 separated ...; rather, loss of earnings, loss of consortium, loss of guidance, mental anguish, and pain and suffering are often to be found, intertwined, in the same claim for relief.”).
At the outset, it is necessary to examine what law determines whether an injury constitutes a personal injury or an injury to business or property. “While federal law governs most issues under RICO, whether a particular interest amounts to property is quintessentially a question of state law.” Doe, 958 F.2d at 768 (citing Logan v. Zimmerman Brush Co., 455 U.S. 422, 430, 102 S.Ct. 1148, 71 L.Ed.2d 265 (1982)). But our court is “not required to adopt a state interpretation of ‘business or property’ if it would contravene Congress’ intent in enacting RICO.” Id. (citing Reconstruction Fin. Corp. v. Beaver Cnty., 328 U.S. 204, 66 S.Ct. 992, 90 L.Ed. 1172 (1946)). “Some role does exist for state law. There is no general federal law of property transfers....” DeMauro v. DeMauro, 115 F.3d 94, 96 (1st Cir.1997). Nonetheless, “[wjhere to set the ‘business or property’ threshold depends on federal statutory purpose, and that purpose is likely to support a definition that is uniform throughout the country.” Id. at 96-97. The task of the court is “to determine whether Congress intended the damages that plaintiffs seek in this case to be recoverable under civil RICO.” Grogan, 835 F.2d at 846.
The majority indeed recognizes this legal framework. It then, however, concludes that Michigan’s definition of property is consistent with Congress’s intent, while engaging in little discussion of that Congressional intent, and relies on Michigan procedural due process jurisprudence to determine whether plaintiffs’ allegations state a claim under RICO. Overlooking or minimizing the federal cases does not merely reject the helpful analogies they offer; it also results in an interpretation of RICO’s standing requirement that departs from both Congressional language and intent.
Plaintiffs alleged that, after they were each injured at work, Cassens and Crawford formed an enterprise and fraudulently denied plaintiffs’ claims for benefits under the WDCA through Notices of Dispute (in which Crawford challenged the validity of the claims as being unsupported by medical evidence or not job-related), opinion letters sent by Dr. Margules (opining that the alleged injury was not job-related or not sufficiently disabling), and additional communications in furtherance of the scheme. Brown IV, 743 F.Supp.2d at 656. Based on this activity, plaintiffs’ alleged damages were that they were deprived of workers’ compensation benefits and incurred attorneys’ fees, medical care expenses, and mileage to and from medical care providers. Id. at 658.
The majority discusses extensively whether an expectation of workers’ compensation benefits constitutes a property interest. This approach ignores the determinative fact that the damages sought in worker’s compensation cases derive from personal injuries. Under RICO, both personal injuries and pecuniary losses flowing from those personal injuries are insufficient to confer standing under § 1964(c). See Evans, 434 F.3d at 926; see also Grogan, 835 F.2d at 846-47. The injury to plaintiffs is not the loss of an opportunity to assert a claim, in which there might or might not be a property interest, but the personal injury for which success on the claim would compensate.[2]
*971 The majority opinion also departs from precedents of our sister circuits. These precedents provide useful examples of damages that compensate for personal injury and those that compensate for injury to property or business interests under RICO. See Evans, 434 F.3d at 926-27 (finding that malicious prosecution and false imprisonment resulting in loss of potential income and attorneys’ fees were personal injuries because, under Illinois law, these claims are traditional tort claims resulting in personal injuries and pecuniary consequences of those personal injuries); Doe, 958 F.2d at 770 (finding that loss of earnings, purchase of a new security system, and employment of a new attorney were derivative of emotional distress resulting from defendant’s sexual encounters with plaintiff and therefore reflected personal injuries that were not compensable under RICO); Grogan, 835 F.2d at 848 (holding that plaintiffs could not recover under RICO “for those pecuniary losses that are most properly understood as part of a personal injury claim,” in this instance, personal injuries inflicted by predicate physical injury or death and the lost employment opportunities that result); Drake, 782 F.2d at 644 (finding that a wrongful death action — based in an employer’s concealment of hazards associated with working in an environment containing vinyl chloride — constituted a personal injury action rather than an injury to business or property). But see Diaz v. Gates, 420 F.3d 897, 898, 900-01 (9th Cir.2005) (en banc) (per curiam) (concluding that plaintiff had alleged an injury to business or property resulting from false imprisonment by alleging “lost employment, employment opportunities, and the wages and other compensation associated with said business, employment and opportunities, in that [he] was unable to pursue gainful employment while defending himself against unjust charges and while unjustly incarcerated”); Evans, 434 F.3d at 928 (“Where an employee is able to establish that he has been unlawfully deprived of a property right in promised or contracted for wages, the courts have been amenable to classifying the loss of those wages as injury to ‘business or property.’ ”). Thus, the cases from other circuits support the defendants’ arguments that pecuniary damages flowing from plaintiffs’ work-related injuries constitute personal injuries, not damages to property or business.
Many of these circuit cases also explain that Congress intended RICO’s standing requirement — which again allows plaintiffs to sue for injuries only to business or property losses — to have real teeth. See Evans, 434 F.3d at 928 (“[Although the economic aspects of Evans’ alleged loss of employment income injury could conceivably be regarded as affecting ‘business or property,’ Congress specifically foreclosed this possibility by adopting the civil RICO standing requirement and its ‘restrictive significance’ from the Clayton Act.”); id. at n. 23 (“[I]t would be contrary to the intent of Congress for this court to construe the statute so broadly that we completely read the ‘restrictive significance,’ of the ‘business or property’ standing requirement out of [the statute].”) (internal citation omitted); Grogan, 835 F.2d at 845 (“The words ‘business or property are, in part, words of limitation; if Congress had intended for the victims of predicate acts to recover for all types of injuries suffered, it would have drafted the statute [differently].”). Congress’s clear desire to limit standing to those who suffer business- or property-related losses makes sense, given that “Congress enacted civil RICO primarily to prevent organized crime from obtaining a foothold in legitimate business.” Doe, 958 F.2d at 768; see also Grogan, 835 *972 F.2d at 845. What does not make sense, however, is to believe that Congress intended to thwart such criminal activity by recognizing a civil action to recover medical expenses and related losses due to a denial of worker’s compensation benefits.
In addition, federal district courts have persuasively determined that the sort of damages sought here are for personal injury, not for injury to business or property. See Bradley v. Phillips Petroleum Co., 527 F.Supp.2d 625, 645-47 (S.D.Tex.2007), summarily aff'd, 337 Fed.Appx. 397 (5th Cir.2009); Brown v. Ajax Paving Indus., 773 F.Supp.2d 727, 734 (E.D.Mich.2011); Lewis v. Drouillard, 788 F.Supp.2d 567, 570-71 (E.D.Mich.2011). In the Southern District of Texas, the federal district court evaluated a “claim that Defendants ‘conspired to defraud [the plaintiffs] of their common law right to file intentional tort claims against their employer for the injuries they suffered’ in [an explosion].” Bradley, 527 F.Supp.2d at 645. “Defendants allegedly ‘paid large monetary settlement awards to certain union officials ... for intentional tort claims outside of [plaintiffs] alleged workers’ compensation plan’.... ” Id. The court found that the plaintiffs’ “RICO claim in no way implicates their ‘business or property’ ” because “[t]he claim solely seeks to redress for personal injuries suffered in the [explosion].” Id. at 647. The “viable personal injury causes of action” failed to “constitute an injury cognizable under RICO.” Id. The court recognized that “the economic consequences of personal injuries do not qualify as ‘injury to business or property’ ” and “at least one court has expressly held that ‘a lost opportunity to bring state law personal injury claims ... is not cognizable as an injury to business or property in a civil RICO action.’ ” Id. at 646 (internal quotation marks omitted) (citing Magnum v. Archdiocese of Phila., 253 Fed.Appx. 224, 226 (3d Cir.2007)). The court then emphasized that this “position is entirely consistent with the legislative purpose of the RICO statute.” Id. (internal quotation marks omitted).
Furthermore, two district courts have recently come to the same conclusion with respect to workers’ compensation claims under the WDCA in the state of Michigan. These decisions have been stayed on appeal pending our decision in this case. As one court concluded,
there is no question that the damages identified in Plaintiffs complaint — diminished worker’s compensation benefits, losses resulting from the delayed payment of benefits, medical expenses, and costs and attorney fees incurred in an effort to secure the benefits to which Plaintiff allegedly was entitled — all stem from an underlying personal injury that led Plaintiff to pursue an award of worker’s compensation benefits.
Ajax, 773 F.Supp.2d at 734 (internal citation omitted). That underlying injury involved an injury to plaintiff while on the job; plaintiff was then examined by a board-certified orthopedic surgeon who opined that plaintiffs injury was work-related; plaintiffs employer denied plaintiffs claim for workers’ compensation benefits; plaintiff sought review of this denial; and plaintiff alleged that his employer attempted to bribe witnesses to testify falsely that plaintiffs injury occurred outside of work. Id. at 730. The court in Ajax agreed with the district court in the ease at bar and found that this allegation was insufficient for a RICO action. Furthermore, the court reasoned that the “ ‘lost cause of action’ theory of civil RICO damages” was sufficient only when “the ‘lost’ suit is itself an injury to ‘business or property.’ ” Id. at 736. Additionally, in Lewis, the court noted, “While it is true that employers or their insurance carriers are required by law to pay workers’ compensation benefits when warranted, the injuries *973 suffered by workers while on the job have never lost their characteristic as personal injuries.” 788 F.Supp.2d at 570 (citing Mathis v. Interstate Motor Freight Sys., 408 Mich. 164, 289 N.W.2d 708 (1980); Specht v. Citizens Ins. Co. of Am., 234 Mich.App. 292, 593 N.W.2d 670 (1999)). The court found that “Plaintiffs’ alleged damages [were] intimately related to then-personal injuries,” and they did “not have standing under RICO.” Id.
Finally, our panel previously referred to the WDCA as a “public regulation of the employment relationship that is a substitute for the tort system rather than any contractual relationship between employees and employers.” Brown v. Cassens Transp. Co. (“Brown III”), 546 F.3d 347, 359 (6th Cir.2008) (emphasis added). The workers’ compensation scheme “creates a legislative remedy regarding the tort-liability relationship.... ” Id. at 360. Our statement is consistent with case law analyzing the intentions of RICO. Given the strong body of case law supporting the notion that plaintiffs’ damages allege only personal injuries, I would conclude the plaintiffs have not pled an injury to business or property, as required under RICO.
The majority chooses to ignore most of the case law supporting the result reached by the district court. Instead, citing Williams v. Hofley Manufacturing Co., 430 Mich. 603, 424 N.W.2d 278 (1988), the majority concludes that Michigan law establishes that a claim for workers’ compensation benefits constitutes a property interest. In Williams, the court concluded that a money judgment rendered in litigation would deprive the defendant employer of its property, and “the United States Supreme Court has held that a cause of action is, in itself, a species of property protected by the Fourteenth Amendment’s Due Process Clause.” Id. at 282 (citing Logan, 455 U.S. at 428, 102 S.Ct. 1148). “Thus, to the extent that the procedure involved would affect the ability of the defendant to present a legitimate defense, the defendant’s property rights are also impaired.” Id. at 282-83. Williams, however, is inapt because it involves an already-decided, legitimate claim of entitlement. That is not the case here. Indeed, it appears that, after the initial denial of benefits, all the plaintiffs but Brown have entered into settlements disposing of their workers’ compensation claims. Resolved claims hardly represent legitimate claims of future entitlement.
The majority also argues that because the workers’ compensation scheme provided for under the WDCA deprives the WCAC of discretion over whether to award benefits, those benefits are essentially guaranteed and constitute legitimate claims of entitlement. Indeed, the WDCA provides for the automatic payment of weekly compensation installments to a person with a disability claim after the employer has notice or knowledge of the disability. Mich. Comp. Laws § 418.801(1). However, weekly compensation is no longer due and payable when there is an “ongoing dispute.” See Mich. Comp. Laws § 418.801(2). An employer can place a claim in dispute by filing a “Notice of Dispute.” Michigan state courts have held that no distinction is to be made among good faith disputes, bad faith disputes, and unreasonable disputes. See Warner v. Collavino Bros., 133 Mich.App. 230, 347 N.W.2d 787, 790 (1984) (“On its face M. C.L. § 418.801(2) ... merely requires an ‘ongoing dispute’ and does not distinguish good faith disputes from bad faith or unreasonable disputes.”); Couture v. Gen. Motors Corp., 125 Mich.App. 174, 335 N. W.2d 668, 670 (1983) (“We cannot read the term ‘dispute’ in either statute to mean only a meritorious or nonfrivolous dispute.”). Thus, although the payment of benefits remains nondiscretionary, payment is not inevitable under the WDCA. In the case at hand, plaintiffs attempted to *974 receive workers’ compensation benefits under the WDCA. Due to allegedly false medical reports and other wrongdoing, those benefits were denied. In order to regain a legitimate claim of entitlement, the WDCA provides an appellate process by which to challenge the dispute over benefits. See Mich. Comp. Laws §§ 418.841(1), 418.847(1), 418.859a(l), 418.861. Although wrongdoing had been alleged in conjunction with that denial, the denial of benefits still exists, and the denial of benefits in no way approximates an “already-decided, legitimate claim of entitlement.” Thus, Williams provides little help to plaintiffs’ position.
For the foregoing reasons, I respectfully dissent. I would affirm the decision of the district court.

. I agree with the majority opinion's determination that Brown III did not deal with this issue and that we should decide it here.

. The majority opinion asserts that focusing on the origin of the injury may yield inconsistent results. But the statutory language delineates the inquiry, which requires an examination of the origins of an injury. Thus, I would characterize the inconsistency the majority describes as the natural result of the Congres *971 sional definition of injuries within the statute's reach.